# VILLAGE OF EGG HARBOR, DOOR COUNTY WISCONSIN, a municipal corporation, Plaintiff-Respondent-Cross-Appellant,

v.

# James G. SARKIS, d/b/a/ Horseshoe Bay Pub & Restaurant, Defendant-Appellant-Cross-Respondent.†

## Court of Appeals

*No. 91-0254. Submitted on briefs October 10, 1991.—Decided November 12, 1991.*

(Also reported in 479 N.W.2d 536.)

† Petition to review denied.

On behalf of the appellant-cross respondent, the cause was orally argued by *Donald Romundson,* and submitted on the briefs of *George Burnett* of *Liebmann, Conway, Olejniczak & Jerry, S.C.,* of Green Bay.

On behalf of the respondent-cross appellant, the cause was orally argued by *Dorothy Dey* and *D. Todd Ehlers,* and submitted on the briefs of *Dorothy Dey* and *Shawn Govern,* of *Quale, Feldbruegge, Calvelli, Thom & Croke, S.C.,* of Milwaukee, and *D. Todd Ehlers,* of *Pankratz Law Office,* of Sturgeon Bay.

Before Cane, P.J., LaRocque and Myse, JJ.

MYSE, J. James Sarkis appeals a judgment upholding an assessment by the village of Egg Harbor related to his remodeling of an existing structure into a pub and restaurant. Sarkis argues that the ordinance under which the assessment was made is inapplicable to

him and that the ordinance is unconstitutional. He also contends that the fine imposed against him for failure to pay the assessment was unreasonable. We reject these arguments and affirm the assessment.

The village cross-appeals that portion of the court's judgment striking down the provision of the ordinance allowing interest to be calculated on the new assessment from the date of the enactment of the ordinance to the date of reassessment. The trial court found the provision to be unconstitutional and an abuse of exercise of the village's police power. The village argues that its interest calculating provision is reasonable because the village has been paying interest on bonds for the construction of the sewage system since it was built. We conclude that the interest provision of the ordinance is unreasonable and, therefore, affirm the trial court's judgment.

The village of Egg Harbor constructed its sewage system in 1987. It then enacted an ordinance to assess property owners in the village to recoup the cost of the system. In May 1988, Sarkis bought property in Egg Harbor. The property was used as a body shop and warehouse prior to Sarkis' purchase and had initially been assessed one residential equivalent unit (REU).

Sarkis remodeled the building into two retail shops. As a result of this remodeling, he was assessed and paid an additional REU. In June 1989, Sarkis added a restaurant and pub to his facilities. As a result of this remodeling, the village assessed Sarkis an additional 4.5 REUs. Sarkis refused to pay the additional 4.5 REUs and challenged the validity of the assessment in court. The trial court found that the village properly reassessed Sarkis under the ordinance and found the reassessment provision to be constitutional, but set aside that portion of the ordinance permitting the village to assess interest on the additional REUs calculated from the date the ordi-

nance was enacted to the date of the assessment. The court then imposed a fine against Sarkis pursuant to the ordinance for failure to pay the assessment.

Sarkis argues that the ordinance by its terms does not permit the additional assessment against his property. In the alternative, he argues that the ordinance is ambiguous and, therefore, should be construed against the drafter.

██

The rules for the construction of statutes and ordinances are the same. *Sauk County v. Trager,* 113 Wis. 2d 48, 55, 334 N.W.2d 272, 275 (Ct. App. 1983). The construction and application of an ordinance to a particular set of facts are questions of law that we review de novo. *Eastman v. City of Madison,* 117 Wis. 2d 106, 112, 342 N.W.2d 764, 767 (Ct. App. 1983). First, we look to the language of the ordinance to determine whether it is ambiguous. An ordinance is only ambiguous when reasonably well-informed persons can disagree as to its meaning. *Kearney & Trecker Corp. v. Wisconsin DOR,* 91 Wis. 2d 746, 753–54, 284 N.W.2d 61, 65 (1979). If we conclude the ordinance is ambiguous, we do not, as Sarkis suggests, construe the ordinance against the drafter. Instead, we examine the scope, history, context, subject matter and object of the ordinance to ascertain the intent of the legislative body that passed it. *See Tahtinen v. MSI Ins. Co.,* 122 Wis. 2d 158, 166, 361 N.W.2d 673, 677 (1985).

In pertinent part, the ordinance in question provides:

> The Village of Egg Harbor hereby establishes permits, fees and charges relative to the connection of properties which are not served by the village sewage system, or other village utility facilities:
> . . ..

10

3. Where remodeling or additions to an existing structure would change the R.E.U.'s assessed, then an additional amount equal to the new R.E.U.'s times the original assessment amount of $3,067.00 per R.E.U. plus interest calculated as set forth above must be paid in full before occupancy is permitted.

First we address Sarkis' contention that, based on the language contained in the preamble, the ordinance unambiguously applies to only those properties that are not yet hooked up to the system.[1] He argues that because his property was already hooked up to the system at the time he remodeled, it cannot be reassessed under the ordinance. We disagree.

The preamble does not in any way limit the application of the ordinance. The preamble is an expression of the village's intent to create an ordinance that would assess fees and charges related to the construction of the village sewage system. The ordinance, enacted prior to the connection of any properties to the system, alludes to the fact that the charges are related to the connection of properties within the village to the new sewage treatment facility. This allusion to historical fact, however, does not alter the language of subsection three that clearly contemplates reassessments against property owners who alter the nature and use of their property by additional construction or remodeling.

Accordingly, we find no merit in the suggestion that the provisions of the ordinance do not apply to any facility already connected to the sewage system. We hold that the sole reference to properties not connected to the system in the preamble reflects the fact that none of the

---

[1]We will assume, without deciding, that the preamble is part of the substantive provisions of the ordinance because the contrary position was not briefed and it does not affect our decision.

properties in the village was connected to the newly-constructed facility at the time of the adoption of the ordinance.

Next, we address Sarkis' contention that the preamble renders subsection three of the ordinance ambiguous. He argues that one could reasonably read the preamble to limit the application of subsection three to only those facilities that are remodeled prior to connection to the system. Consistent with our previous discussion, we find this reading of the statute to be unreasonable. The preamble does not limit the substantive provisions of the ordinance; it merely expresses the village's intent to set up a basis for assessing property owners to pay for the new sewage treatment plant.

While we reject Sarkis' contention that the ordinance is ambiguous, we note that it is unlikely the village board intended to assess restaurants in the village differently based upon whether they were connected to the sewage treatment facility at the time of additional construction or remodeling. Sarkis' interpretation of the ordinance would encourage property owners to hook up to the sewage system and then undertake extensive remodeling projects because they would be immune from reassessment. The cost of the sewage system, under such circumstances, would be disproportionately borne by property owners who had restaurants on their property prior to connection to the sewage system. Such a result creates grave disparities in treatment among restaurant owners in the village.

Consequently, even if we were to conclude that the ordinance is ambiguous, we would determine that the village did not intend to create such unreasonable and disparate results among comparable property owners in the village limits. We would, therefore, resolve the ambi-

guity in favor of the village's intent that remodeled properties be reassessed upon remodeling regardless of whether they were already hooked up to the system.

Sarkis also contends that the ordinance constitutes an unconstitutional exercise of the village's police power because it allows reassessment where no additional benefit is conferred on the property. An ordinance is presumed to be constitutional. *Eastman,* 117 Wis. 2d at 11, 342 N.W.2d at 767. It is the burden of the party seeking to have the ordinance struck down to prove its unconstitutionality beyond a reasonable doubt. *Id.*

When a municipality proceeds under its police power, an assessment based on a benefit and made on a reasonable basis is constitutional. *See CIT Group/Equip. Fin. v. Germantown,* 163 Wis. 2d 426, 437–38, 471 N.W.2d 610, 614 (Ct. App. 1991). Therefore, our inquiries are whether Sarkis' property was benefitted by the sewage system and whether the assessment is reasonable. The municipality need not show that the assessment does not exceed the value of benefits as required under the exercise of the general taxing power. *Gelhaus & Brost, Inc. v. City of Medford,* 144 Wis. 2d 48, 51, 423 N.W.2d 180, 181–82 (Ct. App. 1988).

Sarkis contends that in order to reassess his property, an additional benefit must be conferred upon his property by the village. He argues that there must be some type of physical change in the sewage connection to his property to justify a higher assessment. We disagree.

Sarkis provides us with no law that requires that a change in assessment be based on an additional benefit. Under *Gelhaus,* the only two requirements that an assessment must meet when a village proceeds under its

13

police power are that the assessment be based on some benefit and that it be made on a reasonable basis.

Whether Sarkis' property is benefitted by the construction and installation of the sewage system is a question of fact. *See In re Cherokee Park Plat,* 113 Wis. 2d 112, 122, 334 N.W.2d 580, 585 (Ct. App. 1983). The trial court determined that Sarkis' property was benefitted by the village's system. We will not overturn factual findings unless they are clearly erroneous. Section 805.17(2), Stats.

██

The evidence demonstrates that Sarkis' property is connected to the village sewage system and that his restaurant and pub are projected to make extensive use of the system. Two retail shops on the premises already make use of the system. Sarkis' current use of the sewage system and his ability to use the system for treatment of his restaurant's sewage are benefits that support the trial court's finding. Thus, we conclude the trial court's finding of benefit is not clearly erroneous.

██

Even if we were to conclude that an additional benefit is required to reassess a property, Sarkis' argument fails because he did receive an additional benefit. Sarkis' additional benefit derives from the excess capacity built into the sewage system to accommodate restaurant owners whose restaurants were not in existence at the time of the initial assessment. Until Sarkis remodeled his property, he did not have the ability to burden the system with the use of his facilities as a restaurant. Thus, Sarkis, upon remodeling, received the additional benefit of being able to use the system much more intensively because excess capacity existed to accommodate the use of his property as a restaurant. Without this additional capacity, the system would not have been able to accom-

modate the more intensive use required for a restaurant and Sarkis would not have been able to remodel his existing structure into a restaurant.

Sarkis argues that he had the ability to use the system to its fullest capacity when he only had two retail shops located on the property. He argues that he could have flushed the toilet to his heart's delight and used as much water before the remodeling occurred as his restaurant is projected to use. While this is true, his assessment as a retail shop was based on averages calculated for the projected use of retail shops. Thus, his intensive use of the system as a retail shop owner would be subsumed by the averages calculated for such facilities.[2]

Once Sarkis remodeled his building to include a restaurant, his intensive use is no longer subsumed by the averages for retail shops. His use now is reflected in the averages calculated for the capacity reserved for restaurant owners. Thus, once he is capable of burdening the system as a restaurant he must pay the assessment calculated for that category of user.

This conclusion avoids the absurd results that would occur if we were to accept Sarkis' argument. If we required a physical change in the sewage connection before the village could reassess a property owner, one restaurant assessed initially according to its projected use would pay considerably more than one which was changed into a restaurant from an existing structure where the actual connection was not altered. Thus, the cost of the sewage system would not be proportionately borne by all who were projected to use the system extensively.

---

[2]The estimated flow for different types of structures was arrived at based upon averages calculated and published by DILHR.

Our next inquiry is whether the assessment made is reasonable. This is a question of law that we review de novo. *CIT Group,* 163 Wis. 2d at 433–34, 471 N.W.2d at 613. Presumably, if Sarkis had not changed the nature or use of his facility, it would be unreasonable to reassess his property and charge him more money. However, Sarkis did change the use of his property and his use of the sewage system was projected to be more intensive than was previously calculated. Under these circumstances it was reasonable for the village to reassess his property. This conclusion results in a proportional distribution of the costs of the system over the property owners on the basis of projected use.

This court has already determined that the method by which the village has chosen to assess property owners for its sewer system is reasonable. *Village of Egg Harbor v. Mariner Group,* 156 Wis. 2d 568, 573–574, 457 N.W.2d 519, 522 (Ct. App. 1990). The village assesses every unit or lot in the village, irrespective of use, one base REU. Establishments that are projected to use the system more extensively are assessed additional REUs based on that projected use. This assessment plan was instituted on the rationale that persons who were projected to use the system more extensively should bear their proportionate burden of the cost of the system.[3] The fact that Sarkis' projected use expanded following his initial assessment does not alter our conclusion that this manner of assessment is reasonable. Therefore, because Sarkis' property was benefitted, and because the

[3]We note that Sarkis does not contest the village's representation of his projected use; he contends that even if he uses the system to the full extent of his projected use, the assessment remains unconstitutional.

assessment was reasonable, we conclude the ordinance constitutes a constitutional exercise of the village's police power.

Sarkis' final contention is that the fine imposed against him for failure to pay the assessment is unreasonable. Because Sarkis did not provide us with any legal authority to support his argument or even a theory as to why the fine is unreasonable, we will not consider it. *State v. Shaffer*, 96 Wis. 2d 531, 545–46, 292 N.W.2d 370, 377–78 (Ct. App. 1980).

The village cross-appeals, alleging that the trial court erred by determining that the interest portion of the ordinance is unconstitutional and an abuse of the village's police power. The interest provision authorized the village to charge Sarkis interest on the reassessment back to the date of the enactment of the ordinance, May 28, 1987.

Section 66.60(1)(b), Stats., requires an assessment to be made on a reasonable basis. In addition to the REU value assigned to a unit, the ordinance provides that on reassessments, interest will be charged on the additional REU's back to the date of the enactment of the ordinance. We conclude this to be an unreasonable method of assessing interest.

The village contends that Sarkis benefits by the amount of interest because the village had excess capacity that it held in reserve for his use and for the use of others like him who expand their use of the system. However, Sarkis and other future users of the system are not the only ones to benefit from the ability of the system to handle the excess capacity. All property owners in the village benefit from the village's ability to grow and foster new business. The interest charges, however, are only assessed against new users of the system. Where the

entire village benefits from the excess capacity of the sewage system, it is unreasonable to charge the interest accruing on village bonds for unpaid portions of that capacity only to future users.

The unreasonableness of the interest charges is further demonstrated by the fact that as years pass the interest that will be assessed against future users may not only equal but may even exceed the amount charged for the assessment. Moreover, because the bond interest payments have been made from the inception of this project to the date of Sarkis' remodeling, he is being charged for interest on the bonds over a period of time for which the interest has already been satisfied from other sources.

The village argues that it is entitled to recover the interest on bonds it bought to finance the sewage system. While this proposition is not in question, it must recover those costs in a reasonable manner. We merely conclude that the method chosen by the village is unreasonable. Because we conclude that the interest charges are unreasonable under sec. 66.60(1)(b), Stats., we do not reach the question of whether they are unconstitutional.

*By the Court.*—Judgment affirmed. No costs to either party.