Daniel STEINBACH, Cynthia Steinbach, Chuck Rhein, Mary Rhein, Hugh Zwieg, Pamela Zwieg, Steve Kennedy, Karen Kennedy, Linus Schoepp, Donna Schoepp, Bob Van Metre, Barbara Van Metre, Jack Johnson, Beth Johnson, Leonard M. Teifeld, Anna Styka-Teifeld, Steve Swokowski, Julie Olson, Stout Krug Krug & Ryan, Gary Flatland, Peggy Flatland, John Waggoner, Karen Waggoner, William Bohnen, Linda Bohnen, Robert Connolly, Lynn Connolly, Bob Drisner, Ellen Drisner, John Tennyck, Art Krug, Dewi Krug, Carol Tennyck, Alan Ruud, and Susan Ruud, Petitioners-Respondents-Petitioners,

v.

GREEN LAKE SANITARY DISTRICT, Respondent-Appellant.

Supreme Court

*No. 2003AP2245. Oral argument October 6, 2005.
—Decided June 6, 2006.*

2006 WI 63

(Also reported in 715 N.W.2d 195.)

For the petitioners-respondents-petitioners there were briefs by *Steven R. Sorenson* and *Sorenson Koenig Law Office,* Ripon; and *Kent A. Tess-Mattner* and *Schmidt Rupke Tess-Mattner & Fox, S.C.,* Brookfield, and oral argument by *Steven R. Sorenson* and *Kent A. Tess-Mattner.*

For the respondent-appellant there were briefs by *William P. O'Connor, Mary Beth Peranteau* and *Wheeler,*

*Van Sickle & Anderson, S.C.,* Madison, and oral argument by *William P. O'Connor.*

An amicus curiae brief was filed by *Debra P. Conrad* and *Thomas D. Larson,* Madison, on behalf of the Wisconsin Realtors Association.

¶ 1. PATIENCE DRAKE ROGGENSACK, J. This case requires us to decide whether a special assessment levied against 18 condominium owners (Petitioners) by the Green Lake Sanitary District (the District) to finance a sanitary sewer system was reasonable. We conclude that the sewer system benefited the Petitioners' property. However, we also conclude that one portion of the assessment, the availability charge, lacked a reasonable basis because: (1) there is no nexus between the availability charge assessed against the Petitioners and the District's recovery of "the capital cost to [it] to provide sanitary sewer service to individual lots, including the installation of a lateral stub from the sewer main to each lot";[1] (2) other lots that have multiple habitable units and were provided the same sewer service through one four-inch stub, as were the Petitioners, were assessed only one availability charge; and (3) there is no showing that the Petitioners received a greater benefit than was provided to other lots that were affected by the sewer extension. Therefore, the availability charge was not levied uniformly and imposed an inequitable cost burden on the Petitioners as compared with the benefit accruing to them and to all benefited properties. Accordingly, we reverse the court of appeals decision and remand to the circuit court.

---

[1] Green Lake Sanitary District Amended Resolution No. 97–02, at III, A.

## I. BACKGROUND

¶ 2. The Petitioners are the owners of residential condominium units in the Sunrise Point Resort & Yacht Club Condominium (the condominiums), an 18–unit condominium on Big Green Lake. The District is a town sanitary district organized under Subchapter IX of Wis. Stat. ch. 60. The District operates a wastewater treatment plant and a sanitary sewer collection system serving a portion of the lands within its boundaries. The treatment plant and initial sewer collection lines were constructed in the early 1990s and extended several times thereafter. They were financed by special assessments levied against owners of property served by the system.

¶ 3. The District is governed by an elected, three-member board of commissioners (Commissioners) that, pursuant to Wis. Stat. § 60.77(4) (2003–04),[2] has the authority to project, plan, construct, and maintain a water, solid waste, and sewage system. In June, 2000, the Commissioners adopted a resolution to extend sanitary sewer service to additional lands within the District through the exercise of its special assessment powers under § 60.77(5)(f).[3] The expansion plan included the condominiums.

---

[2] Wisconsin Stat. § 60.77(4) provides in relevant part:

> General powers and duties. The commission may project, plan, construct and maintain a water, solid waste collection and sewerage system, including drainage improvements, sanitary sewers, surface sewers or storm water sewers, or all of the improvements or activities or any combination of them necessary for the promotion of the public health, comfort, convenience or welfare of the district.

All subsequent references to the Wisconsin statutes are to the 2003–04 version unless otherwise indicated.

[3] Wisconsin Stat. § 60.77(5) provides:

¶ 4. The District issued a Special Assessment Report that included the expansion plan and specifications for the proposed sewer extension, an estimation of the project costs and a schedule of assessments against the properties to be served by the planned sewer improvements. It allocated special assessments to all properties included in the plan. The special assessments included two components: an "availability assessment," to cover the costs of making the sewer available to each lot in the plan,[4] and a "connection assessment" to cover the

Specific powers. The commission may:

. . .

(f) Except as provided in s. 66.0721, levy special assessments to finance the activities of the district, using the procedures under s. 66.0703.

[4] Section III of the Resolution covers this charge. It states in pertinent part:

III. SEWER SERVICE AVAILABILITY ASSESSMENT. The District shall impose a sewer service availability assessment on property within the sewer service area for costs of the work to make sanitary sewer service available to the property. Each lot assessed under this section shall be provided with a 4–inch lateral pipe stubbed from the sewer main to the property line or easement line, where applicable, except as provided in Section VI.

A. ASSESSMENT RATE. The sewer service availability assessment shall be levied upon each lot to which access to sanitary sewer service as provided in accordance with the policies adopted herein. This assessment is intended to recover the capital cost to the District to provide sanitary sewer service to individual lots, including the installation of a lateral stub from the sewer main to each lot, terminating at the property or sewer easement boundary. . . .

B. APPLICATION OF ASSESSMENT. A single sewer availability shall be levied upon each lot, regardless of size, accessibility by public or private road or easement, corner location or other characteristics. . . . [I]f it is possible to connect a lateral or private main from an adjacent and contiguous lot or lots to such a terminal point, it shall be assessed a full sewer service availability charge.

19

costs of the infrastructure necessary for transportation of sewage to the treatment plant.[5]

¶ 5. The availability charge, $4,730,[6] was levied against each lot or parcel of record receiving sewer service to recover the capital cost of the installation, including the installation of one four-inch pipe stub

---

[5] Section IV of the Resolution addresses this charge. It provides:

> IV. SEWER CONNECTION ASSESSMENT. The District shall impose sewer connection assessments within the sewer service area for costs of the infrastructure necessary for the transportation of sewage to the District's wastewater treatment plant. One sewer connection assessment shall be levied on each habitable building on a lot and on any structure which is connected to the sanitary sewer system on any lot which does not include a habitable building. No sewer connection assessment shall be levied on [an] accessory connection.

> A. ASSESSMENT RATE. The Sewer Connection Assessment reflects the costs incurred by the District to provide sanitary sewer interceptors, pumping stations, connecting force mains and capacity in that infrastructure for each connected user of the sewer system. The assessment for a single family residence shall be based on 275 gallons of estimated daily wastewater flow. The sewer connection assessment for a single family residence connected to the sanitary sewer system after February 3, 1994 shall be not less than $2300.00 (Two Thousand Three Hundred Dollars) increased by 2.5 percent on February 3 of each year after 1994. All other connections shall be assessed a sewer connection assessment based on the estimated daily flow of wastewater from such habitable building or other connection as determined from Table 12 of Wis. Admin. Code ILHR 83.15(3)(c)2. divided by 275 gallons.

> B. APPLICATION OF ASSESSMENT. The Sewer Connection Assessment shall be levied on each lot which includes any habitable building or accessory connection to the sanitary sewer system. The assessment to be charged shall be determined in accordance with the requirements of this policy.

[6] Special Assessment Report, Schedule Assessments (Dec. 8, 2001).

connecting the sewer main to the property edge of each lot. The connection charge, $5,930,[7] was individually levied against every habitable unit on a lot and every structure connected to the sewer system on any lot that did not include a habitable building. Each Petitioner was assessed fully for both charges, even though the single lot on which all of the condominiums stand was provided with only one four-inch stub.

¶ 6. Pursuant to Wis. Stat. § 66.0703(12)(a), the Petitioners requested circuit court review of the District's levy of the special assessments and the District's inclusion of the condominiums in the extension of the sewage district. However, before briefing and oral arguments, the Petitioners informed the circuit court and the District that they were abandoning the claim relating to the inclusion of the condominiums in the expansion plan. The amount of the assessment remained in dispute.

¶ 7. The Petitioners alleged that the District's method for levying the assessments against them was unfair, arbitrary, and capricious, and in violation of Wis. Stat. § 66.0703 and the District's own assessment policy as set forth in the Resolution. The circuit court determined that the availability portion of the special assessment levied against the condominiums was not in accord with that levied on other properties similarly situated, and was therefore "incorrect."

¶ 8. In reaching this conclusion, the court noted that the Petitioners' aggregate property is listed by the Register of Deeds as one lot, although the individual condominium units are separate tax parcels, and that the District's Resolution levied one availability charge against each lot connected to the sewer main. The court

[7] *Id.*

also pointed out that the District installed only one stub to the Petitioners' property for connection to the sewer main. It ordered the District to reduce the availability charge of the assessment against each condominium unit to one-eighteenth (1/18) of the original $4,730 charge, or $263. This distributed one availability charge among the 18 Petitioners, whose single lot had been provided one four-inch stub. The court left the connection charge intact.[8]

¶ 9. The District appealed, and the court of appeals reversed, holding that the District's exercise of police power had been according to an accepted method of assessment, was not clearly unreasonable, and did not warrant interference by the courts. It ordered the availability charge reinstated as originally assessed by the District. It is that decision that we review.

## II. DISCUSSION

### A. Standard of Review

¶ 10. The circuit court's determination that specially assessed property was benefited is a question of fact. *Village of Egg Harbor v. Sarkis,* 166 Wis. 2d 5, 14, 479 N.W.2d 536 (Ct. App. 1991). We affirm factual determinations unless they are clearly erroneous. *Lac La Belle Golf Club v. Village of Lac La Belle,* 187 Wis. 2d 274, 281–82, 522 N.W.2d 277 (Ct. App. 1994).

¶ 11. Whether the facts relating to a special assessment made pursuant to the police power fulfill the "reasonableness" standard is a question of law that we

---

[8] The Petitioners did not appeal this determination.

review de novo. *Id.* at 281. For purposes of judicial review of the exercise of a police power special assessment, the law presumes that the municipality proceeded reasonably in making the assessment, and the challenger bears the burden of going forward to establish prima facie evidence that the assessment was not reasonable. *Id.* at 281 (citing *Peterson v. City of New Berlin,* 154 Wis. 2d 365, 371, 453 N.W.2d 177 (Ct. App. 1990)); *see also Soo Line R.R. Co. v. City of Neenah,* 64 Wis. 2d 665, 671, 221 N.W.2d 907 (1974). However, once a challenger does so, the burden shifts to the entity levying the assessment "to show that the chosen assessment method comported with the statutory requirement that it" produce a reasonable assessment. *Lac La Belle,* 187 Wis. 2d at 281 (citing *Peterson,* 154 Wis. 2d at 371).

B. Special Assessment Statute

¶ 12. The District levied the special assessment under the authority granted in Wis. Stat. § 66.0703. Wis. Stat. § 60.77(5)(f). The meaning of § 66.0703 is not in dispute; however, we must determine whether the District's assessments met the statutory standard, as interpreted in prior court decisions. Section 66.0703 states, in pertinent part:

> (1)(a) Except as provided in s. 66.0721, as a complete alternative to all other methods provided by law, any city, town or village may, by resolution of its governing body, levy and collect special assessments -upon property in a limited and determinable area for special benefits conferred upon the property by any municipal work or improvement; and may provide for the payment of all or any part of the cost of the work or improvement out of the proceeds of the special assessments.

(b) The amount assessed against any property for any work or improvement which does not represent an exercise of the police power may not exceed the value of the benefits accruing to the property. If an assessment represents an exercise of the police power, the assessment shall be upon a reasonable basis as determined by the governing body of the city, town or village.

The Petitioners contend that the assessment does not meet the requirement of § 66.0703(1)(b) because the District failed to assess them on a reasonable basis. Their arguments are based on common law interpretations of § 66.0703 that we review to guide our analysis of the parties' arguments.

C. Common Law Requirements

¶ 13. We have held that the power of a municipality to levy special assessments against private owners is statutory, and therefore the statutory provisions must be followed if the assessment is to be upheld. *See Green Tree Estates, Inc. v. Furstenberg,* 21 Wis. 2d 193, 124 N.W.2d 90 (1963). Special assessments may be based on the taxing power or on the police power. *Berkvam v. City of Glendale,* 79 Wis. 2d 279, 282–83, 255 N.W.2d 521 (1977). If an assessment is made under the taxing power, the municipality must show that the amount charged to the property does not exceed the value of the benefits received. *Id.* at 282. However, when an assessment is made under the police power, it is not limited to the value of the benefits received by the property owner. *Id.* at 283 (citation omitted). Rather, when the police power is used, the assessment must be made on a reasonable basis. *Id.* at 287. It is the police power that the District employed here.

24

¶ 14. In *Berkvam,* we addressed the statutory requirements under Wis. Stat. § 66.60, the predecessor to Wis. Stat. § 66.0703.[9] *Berkvam* involved a challenge of an assessment for improvements, including storm sewers, concrete curbs, gutters, pavement, and sidewalks, made by the city. Berkvam claimed that the increased traffic volume in the area that would result from the city's planned improvement would decrease the value of the residential property in the area and therefore the assessment was an inequitable and invalid exercise of police power. *Id.* at 282.

¶ 15. We held that while the legislature did not prescribe a particular method for assessing properties under the police power, it required two things: (1) that the property assessed be benefited and (2) that the assessment be reasonable. *Id.* at 287. We utilized another state's precedent to elaborate:

> As one state supreme court has stated, referring to an assessment statute: "[T]he statute does [not] prescribe a specific method for apportioning costs. Where such is the case, the municipality may adopt any plan that is fair and equitable and such that will bring about an assessment in proportion to the benefits accruing."

*Id.* at 287 (citing *Mullins v. City of El Dorado,* 200 Kan. 336, 436 P.2d 837, 844 (1968)).

1. Benefit

¶ 16. The Petitioners first assert that the "benefit" requirement for special assessments was not met. They argue that the extension of sewer services to their property provided no benefit to them because the

---

[9] For the purposes of this discussion, the language of the provisions moved from Wis. Stat. § 66.60 to Wis. Stat. § 66.0703 are the same.

property had no need. At the time that the District made its expansion plans, the condominiums were adequately serviced by a holding tank that was in good working order and was expected to service the condominiums for years to come. They dispute that a sewer connection is a per se benefit. They also contend that while it may be a benefit to some properties covered by the expansion plan, their own specific parcels did not benefit and may have been harmed because of the potential negative effect the added expense of the assessment might have on property values.

¶ 17. The District points out that private holding tanks do not provide the benefits afforded by public sewers, and it cites the circuit court's observation that the 14–year-old holding tank on the Petitioners' property could function now but fail in the near future. The circuit court recognized that future benefits may be considered in sustaining the validity of a special assessment. *Wm. H. Heinemann Creameries, Inc. v. Village of Kewaskum,* 275 Wis. 636, 641, 82 N.W.2d 902 (1957); *CIT Group/Equip. Fin., Inc. v. Village of Germantown,* 163 Wis. 2d 426, 436, 471 N.W.2d 610 (Ct. App. 1991).

¶ 18. To support its position, the District notes the dangers of disease and pollution when a holding tank fails, the impracticality of excluding select properties from an extended sewer system area, and the way that sewer systems have been shown to increase property values. It also points out that Wisconsin courts have consistently recognized the benefits of sanitary sewers, even when the property is already served by a functioning system. *See Fort Howard Paper Co. v. Fox River Heights Sanitary Dist.,* 250 Wis. 145, 153, 156, 26 N.W.2d 661 (1947); *Town of Sugar Creek v. City of Elkhorn,* 231 Wis. 2d 473, 484, 605 N.W.2d 274 (Ct. App. 1999).

¶ 19. Whether a benefit exists is a question of fact. *Preloznik v. City of Madison,* 113 Wis. 2d 112, 118, 334 N.W.2d 580 (Ct. App. 1983). In this regard, the circuit court agreed with the District's position and found that the sewer system benefited the Petitioners' property. That finding is not clearly erroneous.

2. Reasonableness

¶ 20. The analysis for whether a special assessment is "reasonable" has been articulated in a number of ways, depending on the facts of the particular case. For example, while it is true that a property must be benefited by the project for whose costs a special assessment was made, *Berkvam,* 79 Wis. 2d at 287, an assessment need not be limited to the actual benefit to an individual property. *Gelhaus & Brost, Inc. v. City of Medford,* 144 Wis. 2d 48, 50, 423 N.W.2d 180 (Ct. App. 1988). Rather, the assessment of an individual property must be in proportion to the benefits accruing to it when compared with the benefits accruing to all benefited properties. *Id.* at 52; *see also Peterson,* 154 Wis. 2d at 372–73.

¶ 21. In *Gelhaus,* the court of appeals rejected property owners' challenge to a city's special assessments, which contended that the assessments exceeded the benefits to their properties from the public improvement. *Gelhaus,* 144 Wis. 2d at 52. The court held that assessments made under the police power are not limited to the value of the benefits conferred on each individual property; but rather, the reasonableness of a special assessment will be upheld when properties are

benefited and assessments are based on an equitable distribution of costs for the benefits gained. *Id.* The court explained:

> [I]nherent in the requirement that the assessment be made on a reasonable basis is that it must be reasonable and apportioned fairly and equitably among the property owners. For example, in making an assessment, the municipality may not assess one group of property owners by a method that is completely different from the method used to assess another group of property owners, resulting in an entirely disproportionate distribution of costs among various taxpayers.

*Id.* (citing *Schulenberg v. City of Reading*, 410 P.2d 324, 329 (Kan. 1966)). Because the municipality had presented unrebutted affidavits that outlined logical and formulaic cost assessments, and demonstrated that the burden had been fairly and equitably distributed among the individual property owners who benefited, the court concluded that the assessments were reasonable. *Gelhaus*, 144 Wis. 2d at 53.

¶ 22. Furthermore, although a uniform method of assessment will usually produce a reasonable assessment, that is not necessarily so. In *Lac La Belle*, a golf course protested its special assessment for the construction of a sanitary sewer collection system. *Lac La Belle*, 187 Wis. 2d at 279. There, the Village selected an assessment method where each Residential Equivalent Unit (REU), a term defined in the resolution, would be assessed $6,900. *Id.* at 278. Two portions of the golf club were affected by the sewer project, one of which was the 14th hole that under the Village's definition was comprised of ten REU's. *Id.* at 280. The golf club contended that in order to realize on the benefit conferred, it would have to subdivide the 14th hole and expend an amount of money that was not economically feasible.

*Id.* at 279. In concluding that the uniform method chosen by the Village did not produce a reasonable assessment, the court explained that in levying an assessment the municipality must take into account the uniqueness, not only the similarity, of the subject property, as its characteristics are compared to other assessed properties. *Id.* at 286.

■■■

¶ 23. This uniformity/uniqueness assessment also figured prominently in the court of appeals' decision in *Genrich v. City of Rice Lake,* 2003 WI App 255, 268 Wis. 2d 233, 673 N.W.2d 361. There, the court used a uniformity/uniqueness analysis to examine whether the special assessments were reasonable. *Id.,* ¶¶ 20–21 (citing *Lac La Belle,* 187 Wis. 2d at 285–86 and *Peterson,* 154 Wis. 2d at 373). As currently articulated, this analysis has two steps. First, uniformity is examined to determine whether the assessment is fairly and equitably apportioned among property owners in comparable positions. *Genrich,* 268 Wis. 2d 233, ¶¶ 20–21. To pass the uniformity requirement, a municipality must use a method of assessment that yields a "uniform and equal value for all affected properties." *Genrich,* 268 Wis. 2d 233, ¶ 21 (citing *Lac La Belle,* 187 Wis. 2d at 285). Second, in addition to providing uniformity, assessments must not affect unique properties in a disproportionate way. *Genrich,* 268 Wis. 2d 233, ¶ 20. To determine whether a unique property is assessed in proportion to the benefit conferred, courts have considered the "degree, effect, and consequences of the special benefits." *Id.,* ¶ 22; *see also Lac La Belle,* 187 Wis. 2d at 284–88.

3. Application to Petitioners

¶ 24. The District's Resolution at issue here required that the availability charge of the special assess-

ment be levied "upon each lot, regardless of size, accessibility by public or private road or easement, corner location or other characteristics" to which service is made available.[10] A "lot" is defined as either "a lot of record or a parcel of record."[11] Accordingly, because each condominium is a "parcel of record," even though all stand upon one "lot of record," the condominiums were assessed 18 times an individual availability charge, even though their lot received only one four-inch stub.

¶ 25. The Petitioners contend that the District did not appropriately exercise its police power because it did not levy the assessments fairly and equitably among the property owners. The District responds that the assessment was levied uniformly against all single-family residential property owners of record. The Petitioners counter that the District applied the availability charge to each individual condominium owner, yet with other single-lot properties that contain multiple residences, the District levied the availability charge only once. For example, the District applied the availability charge only once to the Southshore Terrace Association,[12] a mobile home park, rather than levying an availability charge against each of its home sites. And, the Pilgrim Center Camp was levied only one availability charge, even though there are many structures on its lot. The District counters that because each condo-

---

[10] Green Lake Sanitary District Amended Resolution No. 97–02, at III, B.

[11] *Id.* at I, A.

[12] The Petitioners represent that SouthShore Terrace Association is "divided into 55 separate cooperative ownership units." Pet. Br., at 26. This may be so, but we could not confirm from the record whether Southshore Terrace Association is a cooperative.

minium unit created by the condominium declaration and plat is a separate parcel of record, the assessment was reasonably applied.

¶ 26. We do not agree with the District for at least three reasons. First, there is no nexus between the charge to an owner of a parcel of record who shares access to the sewer main through one four-inch stub and the District's cost to provide that access. Second, other lots that have multiple habitable units and were provided access to the sewer main through one four-inch stub to the lot were charged only one availability charge. Yet the Petitioners' lot was assessed an availability charge 18 times higher for the same, single four-inch stub. Third, there is no showing that each condominium owner received a greater benefit than was provided to other properties that were affected by the sewer extension. Accordingly, we conclude that the Petitioners have provided prima facie evidence that the availability assessment was not levied uniformly.[13] Therefore, we also conclude that because the costs of extending the sewer were placed disproportionately on the Petitioners, the burden of proving that the assessment was reasonable shifted to the District. *See Lac La Belle,* 187 Wis. 2d at 281.

¶ 27. However, the District's explanation that the condominium units are separate tax parcels does not explain why the purpose of the availability charge under Section III of the Resolution, which specifically

---

[13] Because, as we explain below, the District failed to show that the assessment for the availability charge was uniform in method and effect, we do not continue to analyze whether the uniqueness of the condominiums caused the assessment to be unreasonable as well. *See Genrich v. City of Rice Lake,* 2003 WI App 255, ¶¶ 20–22, 268 Wis. 2d 233, 673 N.W.2d 361.

refers to the cost for one stub to connect each lot to the sewer main, should not have been uniformly applied to all lots that received one access-stub. The Petitioners' lot received only one stub for all of the condominium units. Further, as we noted above, other single lots that have multiple habitable dwellings that were provided with a single stub, were assessed only a single availability charge. The District has not presented any argument as to why this disparate treatment is a fair or equitable distribution of the costs of making the sewer available, except to assert it applied the same method of assessment to everyone. However, as part of the District's method of assessment, it created a definition for the term, "lot," that caused the method of assessment to have dissimilar effects on the properties within the District.

¶ 28. The District also contends that its method was reasonable because it employed the "lump sum" method, which was upheld in *Village of Egg Harbor v. Mariner Group, Inc.,* 156 Wis. 2d 568, 457 N.W.2d 519 (Ct. App. 1990). In *Village of Egg Harbor,* the court of appeals determined that the Village's use of the "lump sum" method to levy assessments, which divided the cost of a waste water treatment plant and collection system among property owners without regard to use, was reasonable because: (1) all property owners were assessed in the same way and (2) while use is relevant in other types of assessments, it is not in determining the base rate of implementing the system. *Id.* at 573. However, the assessment at issue here has a use component, the connection charge, that has not been contested. Also in *Village of Egg Harbor,* shopping mall owners were "no more burdened" than any other owner. In contrast, the condominium owners who were provided with one four-inch stub to make the sewer avail-

able to their lot are burdened much more than are the inhabitants of Southshore Terrace, that also were provided with one four-inch stub to make the sewer available to their lot.

¶ 29.　Wisconsin courts have established that the reasonableness of a particular assessment method depends on the application of its factual consequences to those properties assessed. The court in *Peterson* concluded that no method is per se reasonable, and that neither procedural fairness nor prolonged use can alone assure reasonableness. *Peterson,* 154 Wis. 2d at 372–73. A particular method of assessment is neither reasonable nor unreasonable as a matter of law, but rather, the facts of the particular situation govern its reasonableness. *Id.* at 373; *see also Dittberner v. Windsor Sanitary Dist. No. 1,* 209 Wis. 2d 478, 496, 564 N.W.2d 341 (Ct. App. 1997).

¶ 30.　While it is true that methods of assessment may involve many different alternatives, the requirement that the method fairly apportions the costs of the improvement and does not "arbitrarily or capriciously burden any group of property owners" remains a constant for any method chosen. *See CIT Group,* 163 Wis. 2d at 436–37; *see also Lac La Belle,* 187 Wis. 2d 282. An assessment is unreasonable if it has an "entirely disproportionate distribution" on a group of property owners that can be avoided by the municipality's use of another assessment methodology. *Peterson,* 154 Wis. 2d at 373. We conclude that is what occurred here. This assessment was unreasonable because the assessment charge required the Petitioners to bear a disproportionate amount of the costs of the sewer as compared with the benefit they received. Accordingly, we reverse the deci-

sion of the court of appeals, and remand to the circuit court for the reinstatement of the circuit court order that was reversed by the court of appeals' decision.[14]

## III. CONCLUSION

¶ 31. In sum, we conclude that the sewer system benefited the Petitioners' property; however, we also conclude that one portion of the assessment, the availability charge, lacked a reasonable basis because: (1) there is no nexus between the availability charge assessed against the Petitioners and the District's recovery of "the capital cost to [it] to provide sanitary sewer service to individual lots, including the installation of a lateral stub from the sewer main to each lot";[15] (2) other lots that have multiple habitable units and were provided the same sewer service through one four-inch stub, as were the Petitioners, were assessed only one availability charge; and (3) there is no showing that the Petitioners received a greater benefit than was provided to other lots that were affected by the sewer extension. Therefore, the availability charge was not levied uniformly and imposed an inequitable cost burden on the Petitioners as compared with the benefit accruing to them and to all benefited properties. Accordingly, we reverse the decision of the court of appeals and remand to the circuit court.

*By the Court.*—The decision of the court of appeals is reversed and remanded.

¶ 32. SHIRLEY S. ABRAHAMSON, C.J. (*concurring*). I agree with the majority opinion that the

---

[14] Our decision does not disturb the amounts levied for connection charges.

[15] Green Lake Sanitary District Amended Resolution No. 97–02, at III, A.

matter must be remanded to the circuit court. I write separately for two reasons: (1) the majority opinion lost its way in its analysis of the validity of the assessment charge, and (2) I disagree with the instructions on remand to the circuit court.

I

¶ 33. The Green Lake Sanitary District's power to levy special assessments is governed by Wis. Stat. § 66.0703.[1] Our case law requires a reviewing court to consider three factors in determining whether an assessment in the exercise of the police power has a

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise indicated.

Wisconsin Stat. § 66.0703 states in relevant parts:

66.0703 Special assessments, generally.

(1) (a) Except as provided in s. 66.0721, as a complete alternative to all other methods provided by law, any city, town or village may, by resolution of its governing body, levy and collect special assessments upon property in a limited and determinable area for special benefits conferred upon the property by any municipal work or improvement; and may provide for the payment of all or any part of the cost of the work or improvement out of the proceeds of the special assessments. ·

(b) The amount assessed against any property for any work or improvement which does not represent an exercise of the police power may not exceed the value of the benefits accruing to the property. If an assessment represents an exercise of the police power, the assessment shall be upon a reasonable basis as determined by the governing body of the city, town or village.

(c) If any property that is benefited is by law exempt from assessment, the assessment shall be computed and shall be paid by the city, town or village.

Wisconsin Stat. § 66.60 was renumbered Wis. Stat. § 66.0703 by 1999 Wis. Act 150. No changes have been made to § 66.60 since its original passage during the 1945 legislative

"reasonable basis:" (A) Is the method of assessment reasonable? (B) Is the assessed property benefited by the assessment? (C) Is the effect of the assessment reasonable in that the assessment is in proportion to the benefit accruing to the assessed property?[2]

¶ 34. All three factors go to a determination of reasonable basis.[3] Unfortunately the majority opinion merges these factors. This merger is not surprising, given that some overlap among the three factors exists and that prior cases do not always carefully distinguish among the factors; some cases fuse the reasonableness of the method (that is, the reasonableness of the exercise of the power of assessment) and the reasonableness of the effect (or result) of an assessment.

¶ 35. The law presumes the municipality proceeded reasonably in making the assessment. Courts may intercede only when the exercise of the police power is clearly unreasonable.[4] Reasonableness is a question of law; this court determines reasonableness independent of the circuit court or court of appeals but

session that affect the issues addressed in the present case. In this opinion, § 66.0703 and its predecessor will be referred to as Wis. Stat. § 66.0703.

[2] *See Berkvam v. City of Glendale,* 79 Wis. 2d 279, 287, 255 N.W.2d 521 (1977) (quoting *Mullins v. City of El Dorado,* 436 P.2d 837, 844 (Kan. 1968)); *Lac La Belle Golf Club v. Village of Lac La Belle,* 187 Wis. 2d 274, 285–87, 522 N.W.2d 277 (Ct. App. 1994); *Peterson v. City of New Berlin,* 154 Wis. 2d 365, 371, 453 N.W.2d 177 (Ct. App. 1990); *Gelhaus & Brost, Inc. v. City of Medford,* 144 Wis. 2d 48, 52–53, 423 N.W.2d 180 (Ct. App. 1988).

[3] *Lac La Belle,* 187 Wis. 2d at 283; *Peterson,* 154 Wis. 2d at 371; *Gelhaus & Brost,* 144 Wis. 2d at 52–53.

[4] *CIT Group/Equip. Fin. Inc. v. Village of Germantown,* 163 Wis. 2d 426, 433, 471 N.W.2d 610 (Ct. App. 1991), *cert. den.,* 502 U.S. 1099 (1992).

benefiting from their analyses.[5] The challenger bears the burden of going forward with the evidence and must overcome the presumption that the municipality proceeded reasonably. If the challenger meets its burden, the burden of persuasion that the chosen assessment method comported with the statutory requirement that it be reasonable rests with the municipality. The circuit court's factual determinations are reviewed under the clearly erroneous standard.[6]

## A

¶ 36. The first factor a court addresses in reviewing an assessment under this standard of review is whether the method of assessment is reasonable. The method of assessment is reasonable if all the property owners are assessed uniformly, that is, by the same method.[7] An assessment based upon lineal footage, for example, is uniformly based.[8] Assessing each unit or lot the same base amount regardless of use of the waste water treatment plant and collection system is a uniform assessment.[9]

¶ 37. I conclude that the method of assessment in the present case is uniform. Each tax parcel is assessed an equal share of the direct and indirect costs of installing the single lateral access pipes necessary to connect to the new sewer system.

---

[5] *CIT Group,* 163 Wis. 2d at 433; *Peterson,* 154 Wis. 2d at 370.

[6] *CIT Group,* 163 Wis. 2d at 433; *Peterson,* 154 Wis. 2d at 371.

[7] *Genrich v. City of Rice Lake,* 2003 Wis. App 255, ¶¶ 20–22, 268 Wis. 2d 233, 673 N.W.2d 361.

[8] *Gelhaus & Brost,* 144 Wis. 2d at 53.

[9] *Village of Egg Harbor v. Mariner Group, Inc.,* 156 Wis. 2d 568, 571, 573, 457 N.W.2d 519 (Ct. App. 1990).

¶ 38. According to the statutes governing condominiums, each condominium unit shall be deemed a parcel and shall be subject to separate assessment and taxation by each assessing unit and special district for all types of taxes authorized by law.[10] The Sanitary District uniformly assessed properties on this basis.

¶ 39. The majority attempts to characterize the tax parcel method of assessment as not meeting the uniformity requirement by pointing out that a tax parcel with multiple living units is assessed for a single stub, while each of the condominium units is a separate tax parcel and is assessed for one stub even though all 18 condominiums benefit from access to only one stub.[11]

¶ 40. The majority opinion ignores the uniformity of assessment method and looks to the nature of habitable units on various tax parcels. Few if any properties are exactly alike, and the majority's approach of looking at differences means a court may characterize any method of assessment as not uniform. By examining differences or the effect of the assessment rather than the method of assessment, any uniform method can be made to appear non-uniform.

¶ 41. My point is this: The Sanitary District clearly used a uniform method for all property owners in determining the assessment, namely, each tax parcel was assessed the same amount.

---

[10] Wis. Stat. § 703.21(1).

Property owners whose adjacent properties had more than one tax parcel number were given the opportunity to combine the tax parcels into one tax parcel for taxation and assessment purposes to reduce assessments. According to the Green Lake Sanitary District's brief, combination of parcels may risk loss of development rights under zoning or other regulatory laws.

[11] Majority op., ¶ 27.

¶ 42. Nevertheless, "mere uniformity does not answer a reasonableness challenge."[12] Whether a uniform method of assessment fairly apportions the cost or arbitrarily or capriciously burdens any group of property owners presents a different question than whether the method of the assessment is uniform. Analytically, a court should separate these questions for the benefit of municipalities trying to conform to the statutory standards and for the benefit of litigants and courts.

¶ 43. I conclude the first factor has been satisfied.

## B

¶ 44. The next question a reviewing court must answer is whether the assessed property is benefited by the assessment. Although the condominiums had an operating septic system, the circuit court recognized that a septic system can fail and that a sewer extension project is of benefit. This finding of fact must be affirmed unless clearly erroneous.[13]

¶ 45. I conclude that the second factor has been satisfied.

## C

¶ 46. The final question a reviewing court must answer is whether the effect of the assessment is reasonable, that is, whether the assessment is appor-

---

[12] *Lac La Belle,* 187 Wis. 2d at 285.

[13] Citing *Peterson v. City of New Berlin,* 154 Wis. 2d 365, 370, 453 N.W.2d 177 (Ct. App. 1990), the majority opinion at ¶ 10 treats this finding as one of fact that must be affirmed unless clearly erroneous. The *Peterson* case says no such thing. Several cases do so hold, however. *See, e.g., Village of Egg Harbor v. Sarkis,* 166 Wis. 2d 5, 14, 479 N.W.2d 536 (Ct. App. 1991); *Preloznik v. City of Madison,* 113 Wis. 2d 112, 118, 334 N.W.2d 580 (Ct. App. 1983).

tioned fairly and equitably among the property owners and is in proportion to the benefit accruing to the assessed property.

¶ 47. The cases set forth the following rules for determining whether an assessment made under the police power is reasonable in effect:

- "[A]n assessment is unfair when property owners in comparable positions face a marked disparity in cost for the receipt of equal benefits when an alternate, more equitable, method of assessment is feasible."[14]

- Using the same method to assess a group of property owners is unreasonable "when it results in an entirely disproportionate distribution of costs which easily could be avoided by using another basis for assessment."[15]

- It is unreasonable for a municipality to assess one group of property owners by a method that is completely different from the method used to assess another group of property owners, resulting in disproportionate distribution of costs among various taxpayers.[16]

- When the statute does not prescribe a specific method for apportioning costs, " 'the municipality may adopt any plan that is fair and equitable and such that will bring about an assessment in proportion to the benefits accruing.' "[17]

- An assessment must be in proportion, but not necessarily identical, to the benefits accrued by the

---

[14] *Peterson,* 154 Wis. 2d at 373.

[15] *Peterson,* 154 Wis. 2d at 373.

[16] *Gelhaus & Brost,* 144 Wis. 2d at 52 (citing *Schulenberg v. City of Reading,* 410 P.2d 324, 329 (Kan. 1966)).

[17] *Berkvam,* 79 Wis. 2d at 287 (quoting *Mullins,* 436 P.2d at 844); *Gelhaus & Brost,* 144 Wis. 2d at 52 (citing *Schulenberg,* 410 P.2d at 329).

assessed property. The assessment may exceed the value of the benefit as long as the property is benefited and the assessment is made on a reasonable basis.[18]

- A municipality need not "show that the property is benefited to the full extent of the dollar amount collected."[19]

- The determination of reasonableness must be made on a case-by-case basis.[20]

¶ 48. Three court of appeals cases are instructive in making the determination of reasonableness-in-effect in the present case.

¶ 49. In *Peterson v. City of New Berlin,* 154 Wis. 2d 365, 453 N.W.2d 177 (Ct. App. 1990), the property owner challenged a special assessment to pay for water and sewer improvements. The assessment was based on a uniform method, the front footage of the assessed properties. All of the assessed properties were of approximately the same size. The uniform method of assessment did not, however, make the assessment per se reasonable.[21]

¶ 50. In *Peterson* the "pie shape" of the properties meant that approximately half of the properties had substantially more front footage than the other properties. Thus, the properties with more front footage incurred a substantially disproportionate share of the assessment for sewer and water compared to the properties with less front footage.

¶ 51. The present case is similar to *Peterson.* As in *Peterson,* the assessment in the present case was made

---

[18] *Gelhaus & Brost,* 144 Wis. 2d at 51–53.

[19] *Gelhaus & Brost,* 144 Wis. 2d at 51.

[20] *Peterson,* 154 Wis. 2d at 374.

[21] *Id.* at 373–74.

41

in a uniform manner, but the effect of the uniform assessment was that some property owners paid substantially more than others for the same benefit.

¶ 52. The court of appeals explained in *Peterson* that "not only must the *exercise* of police power be reasonable; its *result* must be reasonable as well."[22] The court of appeals concluded that the assessment was unfair because "property owners in comparable positions face[d] a marked disparity in cost for the receipt of equal benefits when an alternative, more equitable, method of assessment [was] feasible."[23]

¶ 53. The second case is *Village of Egg Harbor v. Mariner Group, Inc.,* 156 Wis. 2d 568, 457 N.W.2d 519 (Ct. App. 1990). In that case, the Village of Egg Harbor constructed a wastewater treatment plant and collection system, and under the police power, levied a lump sum assessment (one base unit amounting to $3,067) against each property, without regard to the property's use of the system.[24] The Village elected a lump sum assessment considering both the availability of the benefit and a minimum level of sewer use.[25]

¶ 54. The properties benefited were very different. Some village properties were part-time summer residences; others were year-round residences; some included seasonal commercial businesses; others were year-round commercial businesses; some were vacant lots.

---

[22] *Peterson,* 154 Wis. 2d at 371.

[23] *Id.* at 373.

[24] Another assessment was made against properties that were projected to use the system in excess of 300 gallons per day.

[25] *Village of Egg Harbor v. Mariner Group, Inc.,* 156 Wis. 2d 568, 571, 457 N.W.2d 519 (Ct. App. 1990).

¶ 55. In both *Egg Harbor* and the present case, the municipality assessed properties in a uniform, lump sum manner based on legal ownership.

¶ 56. In *Egg Harbor*, each of 14 shops in a shopping mall was separately owned, and each shop was assessed $3,067. The owners of the mall properties challenged the lump sum assessment for each of the 14 units because the units had a limited number of restroom facilities. Only the two largest units had internal restrooms, and the development contained two larger public restrooms. According to the owners, they had a cumulative 2.3 unit-use equivalent, not a 14 unit-use equivalent.

¶ 57. The court of appeals upheld the assessment, explaining, in a somewhat conclusory manner, that in this resort community reasonableness requires only that the cost be fairly apportioned; that a base level assessment under the circumstances of that case was not an arbitrary or capricious burden upon any group of property owners; and that the assessment was reasonable because all property owners were assessed by the same method and the mall owners were no more burdened than any other property owner.[26]

¶ 58. A third case, *Lac La Belle Golf Club v. Village of Lac La Belle,* 187 Wis. 2d 274, 522 N.W.2d 277 (Ct. App. 1994), is also helpful. The assessment apportioned the cost of a new sanitary sewer system based on the number of single-family homes that could be accommodated on a property. The method of assessment was uniform, and an equal amount was assessed against

---

[26] *Village of Egg Harbor v. Mariner Group, Inc.,* 156 Wis. 2d 568, 573, 457 N.W.2d 519 (Ct. App. 1990). *See also CIT Group,* 163 Wis. 2d at 436–37.

each affected unit.[27] The golf club conceded it benefited from the sanitary sewer system.

¶ 59. The golf club challenged the assessment, asserting that it was unreasonable to assess the 14th hole of the golf course as ten theoretical single family lots, thus charging ten assessments for the 14th hole.[28] Specifically, the golf club argued that the economic costs of reaping the benefit of the sanitary sewer system were so out of proportion to the benefit conferred that the result of the assessment was unreasonable.[29]

¶ 60. The 14th hole was not available for division into single family home lots without great cost and damage to the golf course. The court of appeals in *Lac La Belle* therefore concluded that the golf course was forced to "bear an inordinate share of the assessment in comparison to other properties similarly situated" because "the cost of reaping the benefit is wholly out of proportion to the benefits accruing."[30] Thus the uniform assessment based on theoretical single-family home lots was unreasonable in its effect on the 14th hole of the golf course.

¶ 61. The present case is like *Lac La Belle* in that both cases address a uniform method of assessment. In both cases, however, the method of assessment was not reasonable considering the nature of the property and the benefit.

¶ 62. *Lac La Belle* stands for the proposition that the effect of an assessment accomplished by a reasonable (uniform) method may be unreasonable as applied because of the nature of the particular property.

---

[27] *Lac La Belle,* 187 Wis. 2d at 285.

[28] *Id.* at 278–79.

[29] *Id.* at 280.

[30] *Id.* at 286.

¶ 63. I now apply the teachings of these cases to the present case. The assessment at issue pays only for the cost of the equipment and installation of the sewer stub. The actual sewer system and use of that system are financed by the connection assessment that is not challenged in the present case.

¶ 64. The benefit at issue in the present case is therefore the benefit of having access to the sewer system.

¶ 65. Each condominium owner, like each owner of a tax parcel with multiple dwelling units or each owner of a tax parcel with a single family home, is charged one assessment. This single charge is proportional to the value and the cost of access to the sewer system. The group of condominium owners, like the owner of a property with multiple dwelling units or a single unit, gets a single access to the sewer system. Thus, the effect of the assessment is to charge each condominium owner a sum for access to the system greater than that charged to any other individual tax parcel.

¶ 66. Applying the tests of fairness, equity, and proportionality to the instant case, I conclude that the 18 condominium property owners receiving one access as a group are in a comparable position to each of the other property owners who received one access. Together, the 18 condominium owners, like a single owner of a single-family home, receive access to one sewer stub. Each of the 18 condominium property owners faces a marked disparity in cost for the receipt of this equal benefit. In the present case the 18 condominium owners are more burdened than other property owners who received the same access.

¶ 67. Although the benefit need not be equal to the assessment, charging each condominium owner 18

times more for access than is charged to other property owners is not a proportional charge. Thus, there is a marked disparity in the amount charged to the condominium owners as compared to the amount charged to the other property owners who received access.

¶ 68. I conclude that in the instant case, using the tax parcel method is not a reasonable basis upon which to assess the condominium owners. The tax parcel method results in a disproportionate distribution of costs that might be avoided by using another basis for assessment. An alternative, more equitable method of assessment is available that would not produce such a disparity.

¶ 69. The majority opinion appears to conclude that the simple alternative is to divide the cost by the number of stubs. I do not determine the more appropriate method of assessment that the Sanitary District should use. That is a task better left to the Sanitary District than performed by a court.

## II

¶ 70. The majority opinion remands the cause to the circuit court to reinstate its judgment and order requiring the Green Lake Sanitary District to modify the existing availability charge against the condominium owners to the amount equal to one-eighteenth of the amount originally charged as an availability assessment. I disagree with this instruction. There is not sufficient evidence in the record from which the court can determine the correct assessment. The briefs make clear that the circuit court's solution was not necessarily a reasonable assessment.

¶ 71. The District's brief points out that any unequal treatment may not necessarily be remedied by simply dividing the cost by the number of stubs. The

size of tax parcels ranges from less than a quarter acre to more than 40 acres; some parcels are used seasonally; the valuation of tax parcels ranges widely.

¶ 72. The amicus brief of the Wisconsin Realtors Association argues that a more rational and fair approach for the District would have been to impose one charge for each actual buildable lot or for each sewer lateral actually installed to connect a property to the sewer system.

¶ 73. Further, because the assessments were based on the total cost of the project, reducing the assessments on condominium owners to one-eighteenth of the original amount may not raise sufficient funds.

¶ 74. The court should not determine the appropriate method of assessment. That is a task assigned by the legislature to the Sanitary District, although a court may reduce an assessment and affirm an assessment as so modified.[31] I would remand the cause to the circuit

---

[31] *See* Wis. Stat. § 66.0703(12)(d), allowing a circuit court to modify an excessive special assessment if there is evidence in the record from which the court can determine the correct assessment. *Area Bd. of Vocational, Tech. & Adult Educ. v. Town of Burke,* 151 Wis. 2d 392, 401, 444 N.W.2d 733 (Ct. App. 1989).

When a special assessment is declared invalid, the statutes empower a municipality to start over. *See* Wis. Stat. § 66.0703(10), providing as follows:

(10) If the actual cost of any project, upon completion or after the receipt of bids, is found to vary materially from the estimates, *if any assessment is void or invalid,* or if the governing body decides to reconsider and reopen any assessment, it may, after giving notice as provided in sub. (7) (a) and after a public hearing, *amend, cancel or confirm the prior assessment.* A notice of the resolution amending, canceling or confirming the prior assessment shall be given by the clerk as provided in sub. (8) (d). If the assessments are amended to provide for the refunding of special assessment B

court to remand the cause to the Sanitary District, the municipality upon which the legislature imposed the duty to levy and collect assessments, for a determination of an alternative, more equitable method of assessment that would not produce the disparity pointed out in the present case.

¶ 75. For the reasons set forth I write separately.

¶ 76. I am authorized to state that Justice ANN WALSH BRADLEY joins this opinion.

bonds under s. 66.0713 (6), all direct and indirect costs reasonably attributable to the refunding of the bonds may be included in the cost of the public improvements being financed (emphasis added).

*See Town of Burke,* 151 Wis. 2d at 401–02.