IN RE the MARRIAGE OF: Patrick A. TOPOLSKI,
Petitioner-Appellant,

v.

Ellen J. TOPOLSKI,
Respondent-Respondent-Petitioner.

Supreme Court

*No. 2009AP2433–FT. Oral argument March 1, 2011.
—Decided July 8, 2011.*

2011 WI 59

(Also reported in 802 N.W.2d 482.)

327

For the respondent-respondent-petitioner there were briefs and oral argument by *Thomas J. Schneck* and *Law Offices of Andrew C. Ladd, LLC,* Madison.

For the petitioner-appellant there was a brief and oral argument by *Joseph F. Owens* and *Law Offices of Joseph F. Owens, LLC,* New Berlin.

¶ 1. SHIRLEY S. ABRAHAMSON, C.J. This is a review of an unpublished decision of the court of appeals reversing an order of the circuit court for Waukesha County, James R. Kieffer, Judge.[1] The circuit court interpreted the parties' Marital Settlement Agreement, which was incorporated in the judgment of divorce, as requiring Patrick Topolski, the husband, to pay Ellen Topolski, the wife, $912.88 per month from his disability benefits under a pension plan. The circuit court order awarded judgment in the amount of $83,072.08 plus interest to the wife and found the husband in contempt for failing to comply with the Marital Settlement Agreement.

¶ 2. The court of appeals reversed that part of the circuit court order finding the husband in contempt and requiring him to pay his wife $912.88 per month with interest from December 2001 when he began receiving monthly disability payments from the pension plan. The court of appeals concluded that the wife was not entitled to receive $912.88 from the monthly disability pension benefit but was entitled to receive $912.88 from the monthly retirement benefit when the husband reached the age of 65, the "normal retirement age" under the pension plan, "the age at which the parties contemplated that he would have retired had he not been injured."[2]

¶ 3. The issue presented is whether the husband's receipt of disability pension benefits paid under the

---

[1] *Topolski v. Topolski,* No. 2009AP2433–FT, unpublished slip op. (Wis. Ct. App. May 5, 2010).

[2] *Topolski v. Topolski,* No. 2009AP2433–FT, unpublished slip op., at 3 (Wis. Ct. App. May 5, 2010).

Electrical Construction Industry Pension Plan ("Pension Plan"), beginning in December 2001 when he was 53 years old, required him to pay $912.88 per month to the wife pursuant to their judgment of divorce, which provided as follows: "All retirement, pension, and deferred benefit accounts in [the husband's] name, less the sum of $912.88 to be paid by [the husband] to [the wife] per month, if and when received by him."

¶ 4. To resolve this issue, we must interpret the language of the parties' Marital Settlement Agreement and apply the Marital Settlement Agreement to the husband's disability pension under the Pension Plan.

¶ 5. Under the husband's Construction Industry Pension Plan, the amounts he received as disability benefits did not reduce the amounts payable to him as a retirement benefit when he reached early (62 years of age) or normal retirement age (65 years of age). The early retirement benefit at age 62 and the normal retirement benefit are the same amounts.

¶ 6. We conclude as follows:

(1) The Marital Settlement Agreement's reference to "all retirement, pension, and deferred benefit accounts" does not address disability benefits.

(2) The husband's disability pension under the Pension Plan, beginning when he was 53 years old and continuing until he attains the age of 62, replaces lost wages and therefore does not constitute a retirement, pension, or deferred benefit account under the Marital Settlement Agreement. Thus, the Marital Settlement Agreement does not require the husband to pay to his wife any portion of the disability pension that he receives before age 62.

(3) When the husband reaches the age of 62 he is eligible to receive an unreduced "early pension" under

the Pension Plan, which is the same amount as his "normal pension" would be at age 65, which in turn is the same amount as his disability pension has been. Thus, the husband's disability pension under the Pension Plan when he reaches the age of 62 constitutes a retirement, pension or deferred benefit account under the Marital Settlement Agreement. And so, pursuant to the Marital Settlement Agreement, when the husband reaches age 62, the husband must pay the wife $912.88 per month if and when the husband receives the disability pension under the Pension Plan.

¶ 7. This holding places the husband and wife in the same position they would have been in had the husband not become disabled. This holding gives both the husband and wife exactly what they bargained for in the Marital Settlement Agreement: The husband retains, as the parties agreed, full right to earnings from his employment (here the disability payments are a substitute for earnings from employment); the wife is not entitled, under the Marital Settlement Agreement, to any part of the husband's earnings. The husband's retirement benefits under the Pension Plan are not reduced or otherwise affected by the disability payments made to the husband. "If and when" the husband "receives" his retirement benefits under the Pension Plan, the wife is to be paid $912.88 per month under the Marital Settlement Agreement. The husband is eligible to receive full retirement benefits at age 62 under the Pension Plan and "if and when" the husband receives retirement benefits at age 62 the husband pays the wife the monthly sum upon which they agreed in the Marital Settlement Agreement.

¶ 8. Accordingly, we determine that the circuit court erred in holding the husband in contempt and in awarding the wife $83,072.08 plus interest.

¶ 9. We affirm the decision of the court of appeals reversing that portion of the order of the circuit court holding the husband in contempt and ordering him to make payments of $912.88 per month with interest to the wife from December 2001. We modify the decision of the court of appeals, however, to provide that under the Marital Settlement Agreement the wife is entitled to $912.88 per month if and when the husband receives the disability pension under the Pension Plan beginning the first month immediately following his 62nd birthday. The court of appeals erred in holding that the wife's monthly payment begins when the husband reaches his 65th birthday, rather than his 62nd birthday.

I

¶ 10. The facts are undisputed for purposes of this review. Patrick and Ellen Topolski were divorced on January 3, 1995, after a marriage of 24 years. At the time of the divorce the husband was able-bodied and employed as an electrician. The judgment of divorce incorporated a Marital Settlement Agreement setting forth the division of the parties' property.

¶ 11. Maintenance was permanently waived by both the husband and wife under the Marital Settlement Agreement.

¶ 12. Pertinent to this review, under the Marital Settlement Agreement the parties divided their interests in "all retirement, pension, and deferred benefit accounts" in the husband's name. The husband was awarded "all retirement, pension, and deferred benefit accounts" "if and when received by him" less the sum of $912.88 per month which he was to pay his wife as follows:

> All retirement, pension, and deferred benefit accounts in [the husband's] name, less the sum of $912.88 to be

paid by [the husband] to [the wife] per month, if and when received by him. If [the wife] predeceases [the husband], her interest lapses and reverts to [the husband].

Correspondingly, the wife was awarded: "The sum of $912.88 per month by direct payment from [the husband] following his receipt of pension and retirement benefits, if and when received by him. If [the husband] fails to honor this requirement, [the wife] will be automatically entitled to obtain a QDRO from the court to enforce same."[3]

[3] A generic definition of a QDRO, a Qualified Domestic Relations Order, is "a court order directed to a retirement plan to divide, or pay, all or a portion of the plan participant's benefits or account balance to the nonparticipant alternate payee spouse or qualified dependant." Timothy C. Voit, *Retirement Plan Benefits and QDROs in Divorce* 143 (2004).

The Wisconsin Judicial Benchbook, citing 29 U.S.C. 1056(d)(3)(B)(i), (C), (D), discusses a QDRO as follows:

2) *Qualified Domestic Relations Order.* A "Qualified Domestic Relations Order" is a Domestic Relations Order which

a. Creates or recognizes the existence of an Alternate Payee's rights to, or assigns to an Alternate Payee the right to, receive all or a portion of the benefits payable with respect to a Participant under a Plan, and

b. Clearly specifies certain facts, and

c. Does not alter the amount or form of benefits under a Plan

d. Even though signed by the Ct, a Domestic Relations Order becomes "Qualified" (i.e. approved) only after it is signed by the Plan Administrator.

3 *Wisconsin Judicial Benchbook* FA 12–6 (3d ed. 2007).

When dividing marital interests in a retirement plan at divorce, a QDRO can be the most equitable way to divide retirement assets and may prevent disputes at a later time.

¶ 13. Nothing in the record explains how the parties valued the wife's or husband's interests in retirement, pension, and deferred benefit accounts to reach the sum of $912.88 payable to the wife each month.

¶ 14. In 1998 and in 2000 the husband suffered a series of strokes leaving him unable to work as an electrician. In December 2001, the husband, then 53 years old, qualified for and began to receive "disability pension" payments under the Electrical Construction Industry Pension Plan of $2,348 per month.[4] The Pension Plan defines "disability" as "a physical or mental condition which, in the judgment of the Trustees, will totally and presumably permanently prevent an Employee from engaging in employment or gainful pursuit in the electrical industry or as a craftsman in any building trades industry."

¶ 15. In 2008, after determining that the husband had received Pension Plan benefits starting in 2001 but had failed to pay her the sum of $912.88 monthly, the wife brought a motion in the circuit court seeking a Qualified Domestic Relations Order for $912.88 per month pursuant to the relief provided in the Marital Settlement Agreement, as well as payment (with accrued interest) from the time the husband commenced receiving benefits.

¶ 16. The circuit court held a hearing on the wife's motion. The wife's testimony centered on why she had waited so long to bring the motion seeking payment from the husband. She did not testify regarding her understanding of the terms of the Marital Settlement Agree-

---

[4] The husband also began receiving Social Security disability benefits. The Social Security benefits are not at issue in this case. The wife does not claim any right to those disability benefits.

ment or the intent of the parties at the time of the divorce regarding the Marital Settlement Agreement.

¶ 17. The wife presented an expert witness, who testified generally about pension valuation and pension division at divorce. The wife's expert also testified that in his opinion, upon review of the Pension Plan and Marital Settlement Agreement, the disability pension payments the husband was receiving were pension retirement benefits pursuant to the Pension Plan. The expert further opined about whether the husband's receipt of these disability pension benefits triggered his obligation to pay the wife $912.88 per month pursuant to the Marital Settlement Agreement.

¶ 18. The wife's counsel asked the expert: "It's your opinion that once Mr. Topolski [the husband] commenced receiving benefits, the clause in the Divorce Judgment was triggered and he was required to pay $912.88?"[5] The expert responded: "The answer is yes." The expert witness did not testify about the intent of the parties about the meaning of the Marital Settlement Agreement at the time of the divorce judgment.

¶ 19. The husband was the only witness on his behalf at the hearing. He did not testify regarding his understanding of the terms of the Marital Settlement Agreement or the intent of the parties at the time of the divorce about the Marital Settlement Agreement. The husband was asked what his expected retirement date was at the time of divorce. He responded that his expectation was to retire at 62 and that he would have no problem with making payments to his wife at that time. The direct examination on this topic proceeded as follows:

---

[5] The husband's counsel objected to this question asserting that it called for a legal conclusion. The objection was overruled.

Q. [Husband's counsel] When the language of this divorce marital settlement agreement was entered into, did you have an intended retirement date in mind that this would start?

A. [Husband] No.

Q. You were abled [sic] body, did you expect to work until you were 65 or 62? What was your expectation?

A. Probably 62.

Q. So you would not have a problem with getting payments to her at age 62; is that a fair statement?

A. No.

Q. You would have no problem or would you have a problem?

A. No, I wouldn't have a problem.

¶ 20. The husband's counsel argued to the circuit court that the disability pension was income and that not until the husband attained the age of 62 did the disability pension constitute a retirement, pension, or deferred benefit account under the Marital Settlement Agreement.

¶ 21. The circuit court was not persuaded by the argument that the disability pension the husband was receiving should be characterized as income, as opposed to a retirement, pension, or deferred benefit account subject to division under the Marital Settlement Agreement. The circuit court rejected the husband's income argument, stating its interpretation of the Marital Settlement Agreement and the Pension Plan as follows:

I recognize the parties did waive their requirements or the ability to receive maintenance and I think that may

have come about for various reasons, all of which I really don't know but I know at the time of the divorce Patrick [the husband] was healthy and was working and he did not envision ever becoming disabled such as has happened with him but I disagree this is taking income from him as opposed to simply enforcing the property division itself.

¶ 22. The husband's counsel argued that the disability pension should be considered a retirement, pension, or deferred benefit account under the Marital Settlement Agreement when the husband attained the age of 62: "It would seem appropriate that beginning at age 62 the [$]912.88 would start based on his testimony and that is the earliest point in time that we should start this monthly benefit."

¶ 23. In written finding number 7, the circuit court did not accept this argument. The circuit court concluded that the disability pension was a retirement, pension, or deferred benefit account, commenting as follows:

That it is clear from the testimony of the experts [sic], the parties and the Plan documents, themselves, that disability pension benefits received by the Petitioner [Mr. Topolski] are retirement benefits pursuant to the parties' Judgment of Divorce; That to argue that Petitioner has received anything other than benefits under his pension plan, is inappropriate[.]

This finding is not labeled as fact or law, but is an interpretation of the language of the Divorce Judgment, the Marital Settlement Agreement, and the Pension Plan.

¶ 24. Based upon its interpretation of the Divorce Judgment, the Marital Settlement Agreement, and the Pension Plan the circuit court also found, during the hearing, that the wife was not equitably estopped from

339

pursuing monthly payments beginning in December 2001:

> I find there is absolutely no basis in this record to indicate that [the wife] should be equitably estopped from pursuit of what had been awarded to her per the parties' own agreement going back to the time of their divorce.[6]

¶ 25. The circuit court implemented a qualified domestic relations order in favor of the wife pursuant to the Marital Settlement Agreement and awarded the wife $912.88 per month (plus interest) starting from December 2001.

II

¶ 26. We begin our analysis by determining the proper standard of review. We are called on in the present case to determine whether the circuit court erred in its use of the contempt power.

¶ 27. In reviewing a circuit court's use of its contempt power, we determine whether the circuit court erroneously exercised its discretion.[7] A circuit court erroneously exercises its discretion if it makes an error of law. This court decides any questions of law that may arise during its review of a circuit court's exercise of discretion independently of the circuit court and court of appeals, benefiting from their analyses.[8]

---

[6] Quoted in part at ¶ 17 of the dissent.

The issue of equitable estoppel is not before the court.

[7] *Krieman v. Goldberg,* 214 Wis. 2d 163, 165, 571 N.W.2d 425, 427 (Ct. App. 1997).

[8] *State v. St. George,* 2002 WI 50, ¶ 37, 252 Wis. 2d 499, 643 N.W.2d 777 (2002).

¶ 28. In the present case, the circuit court exercised its discretion on the basis of its interpretation of the Marital Settlement Agreement and the Pension Plan. The interpretation of the Divorce Judgment, the Marital Settlement Agreement, and the Pension Plan is a question of law, which we decide independently of the court of appeals and circuit court but benefiting from their analyses.[9]

¶ 29. The principles that govern interpretation of written documents are well established.

¶ 30. Ordinarily the interpretation of a written document is a matter of law. If, however, a document is ambiguous or the parties rely on extrinsic evidence bearing on the intent of the parties to the contract regarding the writing when it was made, the question is one of fact for the fact-finder.[10]

¶ 31. In the present case, neither party claims the Marital Settlement Agreement or the Pension Plan is ambiguous, and neither party offered or introduced extrinsic evidence in the circuit court bearing on the intent of the parties regarding the meaning of the text of either document. The standard of review for circumstances such as these was stated as follows in *Thurston*

---

[9] *Sulzer v. Diedrich,* 2003 WI 90, ¶ 16, 263 Wis. 2d 496, 664 N.W.2d 641.

[10] *Streiff v. Am. Family Mut. Ins. Co.,* 118 Wis. 2d 602, 604, 348 N.W.2d 505 (1984); *Kraemer Bros., Inc. v. U.S. Fire Ins. Co.,* 89 Wis. 2d 555, 278 N.W.2d 857 (1979); *RTE Corp. v. Maryland Cas. Co.,* 74 Wis. 2d 614, 620–21, 247 N.W.2d 171 (1976); *Bauman v. Midland Union Ins. Co.,* 261 Wis. 449, 451–52, 53 N.W.2d 529 (1952).

341

*v. Burnett & Beaver Dam Farmers' Mut. Fire Ins. Co.,* 98 Wis. 476, 478–79, 74 N.W. 131 (1898):

> [W]here language is plain and unambiguous, the apparent import of the words must govern, and the rule that where there is no uncertainty as to the meaning of the words used in the contract, and where such uncertainty exists but there is no extrinsic evidence or circumstance bearing on the subject to be considered in determining the meaning attributed to them by the parties when the contract was made, the proper interpretation of the words and construction of the contract are solely for the court.

¶ 32. Accordingly, we determine the meaning of the Marital Settlement Agreement and the Pension Plan as questions of law.

## III

¶ 33. We turn now to interpreting the Marital Settlement Agreement. The best indication of the parties' intent is the language of the document itself.[11] Words in a document should be given their plain and ordinary meaning unless the word has a technical meaning.[12] Technical words are to be interpreted as usually understood by persons in the profession or business to which they relate, unless the context of the document or an applicable custom or usage clearly indicates that a different meaning was intended.[13]

---

[11] *Levy v. Levy,* 130 Wis. 2d 523, 535, 388 N.W.2d 170 (1986).

[12] *Huml v. Vlazny,* 2006 WI 87, ¶ 52, 293 Wis. 2d 169, 716 N.W.2d 807.

[13] *North Gate Corp. v. Nat'l Food Stores,* 30 Wis. 2d 317, 321, 140 N.W.2d 744 (1966).

¶ 34. The Marital Settlement Agreement awards the husband, as we have stated previously, "all retirement, pension, and deferred benefit accounts in his name . . . ."

¶ 35. Nothing in the Marital Settlement Agreement refers to the disability of either party or to disability payments.

¶ 36. Judge James R. Kieffer presided over the divorce proceedings in 1995 and presided over the hearing on the wife's motion at issue here. In the judgment of divorce, the circuit court ruled: "The Marital Settlement Agreement which was entered by the parties is found to be fair and reasonable, is approved in its entirety, and is incorporated within the Judgment of this Court as an integral part thereof." In the instant case, the only comment the circuit court made relating to the divorce judgment was the following: "I know at the time of divorce Patrick [the husband] was healthy and was working and he did not envision ever becoming disabled such as has happened with him . . . ." This appears to be a casual comment, not a considered ruling.

¶ 37. Nothing in the Marital Settlement Agreement specifically addresses the husband's interest in the Electrical Construction Industry Pension Plan. Indeed no particular retirement, pension, or deferred benefit account is referenced in the Marital Settlement Agreement; the Marital Settlement Agreement addresses the husband's interest globally in any and all retirement, pension, and deferred benefit accounts in his name.

¶ 38. Indeed, the record does not include the Electrical Construction Industry Pension Plan that may have been in existence at the date of the divorce. The record does not even include the Electrical Con-

343

struction Industry Pension Plan in existence in December 2001 when the husband began collecting the disability pension. The only Pension Plan in the record is dated 2007, and the motion was heard as if this 2007 Pension Plan were in existence at the time of divorce, in December 2001, and throughout this litigation.[14]

¶ 39. The context of the Marital Settlement Agreement indicates that the words "retirement", "pension," and "deferred benefit accounts" are not used in a technical sense. No one has offered an interpretation of these words as usually understood by persons in the profession or business to which they relate. The wife's expert witness was an expert in the subject of pension valuation for purposes of divorce. He offered no expert opinion that the words "retirement," "pension," or "deferred benefit account" in the Marital Settlement Agreement had a technical meaning.[15]

¶ 40. Thus, we begin by giving the word "retirement" in the Marital Settlement Agreement its plain and ordinary meaning. Nothing in the record indicates that the parties intended to incorporate the definition of "retirement" used in the Electrical Construction Industry Pension Plan. Thus, unlike the circuit court, we do not interpret the word "retirement" in the Marital Settlement Agreement by using the definition of "re-

---

[14] The record contains the Summary Plan Description for the Electrical Construction Industry Pension Plan dated December, 2007.

[15] The expert testified about the meaning of the phrase "if, as and when" which he viewed as a technical phrase in the industry. The expert testified: "Shared interest division works if, as and when. It's a very specific term in my industry. If the participant collects, as the participant collects it, when the participant collects it. That's basically the term that's in my industry."

The Marital Settlement Agreement in the present case does not use the phrase "if, as and when."

tirement" set forth in the Electrical Construction Industry Pension Plan.[16]

¶ 41. The plain and ordinary meaning of "retirement" is the withdrawal from work, often due to reaching a particular age.[17] Retirement does not ordinarily mean termination of employment resulting from an inability to work due to a medical condition.

¶ 42. The plain and ordinary usage of the word "pension" is to refer to income a person receives when he or she reaches retirement age and no longer earns regular income from employment.[18] "Pension plan" is often used interchangeably with "retirement plan" and in common parlance "pension income" and "pension account" or "retirement income" and "retirement account" are used interchangeably.

---

[16] The Electrical Construction Industry Pension Plan defines "Retirement" as "The period after you qualify for a pension under the Plan and start to receive monthly pension payments . . . ."

[17] Webster's New World Law Dictionary defines "retirement" as "the voluntary termination of employment upon reaching a certain age." *Webster's New World Law Dictionary* (2010).

[18] "Pension: money that someone regularly receives after they have stopped working because of their age, paid either by their company or by the government." *Macmillan Dictionary* (2009).

"Pension: a regular payment made by an employer to former employees after they retire." *Collins English Dictionary-Complete and Unabridged* (2003).

"Pension: a fixed sum paid regularly to a person." *Merriam-Webster Dictionary* (2011).

"Pension: A benefit, usually money, paid regularly to retired employees or their survivors by private businesses and federal, state, and local governments." *West's Encyclopedia of American Law* (2d ed. 2008).

¶ 43. Nothing in the record defines the phrase "deferred benefit accounts." The plain and ordinary meaning of that phrase used in context with the words "pension" and "retirement" seems to describe a benefit that will be realized sometime in the future. Reference to deferred benefit accounts seems like a reference to deferred compensation received on the attainment of a particular age.

¶ 44. The value of a spouse's interest in a retirement, pension, or deferred benefit account, although presenting valuation challenges, is generally classified as a divisible asset at divorce.[19] Therefore, these assets generally must be considered in the circuit court's division of property at divorce.

¶ 45. In contrast, a disability benefit is ordinarily viewed as distinct from a retirement, pension, or deferred benefit account. "Disability benefit" or "disability income," in ordinary parlance, commonly refers to a payment received when a person is unable to work, either in a chosen profession or totally, due to a physical or mental medical condition. Disability benefits are not ordinarily referred to as deferred compensation. Disability benefits are generally considered wage replacement, that is, compensation for lost future wages because a physical or mental condition prevents the person from being gainfully employed.

---

[19] *Cook v. Cook,* 208 Wis. 2d 166, ¶ 18, 560 N.W.2d 246 (1997)(holding that military retirement pay must be considered in dividing the property in a divorce proceeding); *Steinke v. Steinke,* 126 Wis. 2d 372, 380, 376 N.W.2d 839 (1985), 127 Wis. 2d 444, 379 N.W.2d 853 (1986) (on reconsideration) ("[W]e hold that, as a matter of law, the value of a spouse's interest in a pension fund must be included by the trial court in the division of the property between the spouses.").

¶ 46. Disability payments, such as Social Security disability payments or veteran's disability payments, replace the wages lost by the individual due to the disability and are generally classified as income at divorce.[20] As such, these payments are not assets divisible at dissolution of the marriage. Instead, they are considered income for the purpose of determining a maintenance award.

¶ 47. Courts have differentiated between disability payments, which are generally not a divisible asset at divorce, and retirement benefits, which are generally divisible at divorce.

¶ 48. For example, in *Leighton v. Leighton,* 81 Wis. 2d 620, 261 N.W.2d 457 (1978), this court addressed the division of a veteran's disability pension. In that case, this court "sharply" distinguished the "disability pension from a present interest, vested or unvested, in a retirement plan . . . ."[21] The court concluded that the disability pension was replacement for lost earning capacity due to injuries suffered in military service. The court equated the benefit to payment under the Social Security Act to disabled workers.[22] Thus, the veteran's disability benefit in *Leighton* was treated as income subject to a maintenance award determination and not as a divisible asset.[23]

---

[20] *See Leighton v. Leighton,* 81 Wis. 2d 620, 637, 261 N.W.2d 457 (1978) ("We view the [Veteran's] disability benefits in the case before us as income to the defendant, material only to his ability to pay alimony, if alimony were awarded.").

[21] *Id.* at 636.

[22] *Id.* at 636–37.

[23] *Id.* at 637.

¶ 49. Giving the text of the Marital Settlement Agreement at issue its plain and ordinary meaning, we agree with the court of appeals that the parties' intent, evident in the language of the Marital Settlement Agreement, was to entitle the wife to receive a portion of all the husband's retirement, pension, and deferred compensation accounts, and that nothing in the Marital Settlement Agreement addresses disability benefits.

IV

¶ 50. Having interpreted the Marital Settlement Agreement, we now look to the Pension Plan. We interpret the Pension Plan to determine whether the disability pension payment to the husband is a "retirement," "pension," or "deferred benefit account," as those words are used in the Marital Settlement Agreement.

¶ 51. The husband contends that the disability pension payments are a substitute for wages. The wife contends that the disability pension is a form of retirement, pension, or deferred benefit account, that is, compensation for past services, and that it must be treated as such under the Marital Settlement Agreement.

¶ 52. The court need not accept either of these absolutist positions. There is a more nuanced approach to classifying disability benefits. A disabled spouse's disability benefit may in effect be an amalgam: a portion may be a replacement for lost wages and a portion may be a replacement for deferred compensation (that is, retirement or pension benefits).

¶ 53. Depending on the terms of a plan, a disability benefit may encompass both a wage replacement component and a deferred compensation replacement

component. In other words, under a plan, a disability benefit may in substance be both a replacement for lost future wages and a replacement for deferred compensation. The disability benefit should be viewed in light of the totality of the circumstances to determine whether all or any part of the disability benefit received by the disabled spouse replaces post-divorce lost wages or replaces deferred compensation.[24]

¶ 54. When and to the extent that a disability benefit replaces the disabled spouse's post-divorce wages, the benefit should be characterized as income and will be individual property not subject to property division at divorce.

¶ 55. Alternatively, when and to the extent that the disability benefit replaces deferred compensation, the disability benefit should be characterized as deferred compensation and will be subject to property division at divorce.

¶ 56. This approach enables courts to differentiate among a multitude of disability benefits under a multitude of different circumstances that a court may encounter.

¶ 57. There is nothing in the record in the instant case to show that in executing the Marital Settlement Agreement or in dividing the husband's interest in retirement, pension, or deferred benefit accounts, the

---

[24] For similar analyses, see, *e.g., Conner v. Conner,* 68 P.3d 1232 (Alaska 2003); *Villasenor v. Villasenor,* 657 P.2d 889 (Ariz. Ct. App. 1982); *Saslow v. Saslow,* 710 P.2d 346 (Cal. 1985); *In re Marriage of Leland,* 847 P.2d 518 (Wash Ct. App. 1993).

parties considered the potential for or effect of the husband's becoming disabled and qualifying for disability benefits.

■■■■

¶ 58. Now that the unfortunate and unforeseen disability has occurred, the task of the court is to understand the characteristics of the disability pension under the Pension Plan and to determine whether the disability pension is a retirement, pension, or deferred benefit account, as those words are used in the Marital Settlement Agreement, regardless of the label "pension" or "retirement" that the Pension Plan has placed on the disability benefit. The characteristics of the disability pension under the Pension Plan, not the label used in the Pension Plan, determine how the disability pension will be treated under the Marital Settlement Agreement.

¶ 59. We turn to analyze the characteristics of the disability pension the husband receives under the Pension Plan.

¶ 60. The Pension Plan defines the disability benefit as a "pension" for purposes of the Pension Plan. The Pension Plan explicitly provides for three kinds of *pensions:* (1) a *"normal pension"* for an employee who is at least age 65 at termination of employment, (2) an *"early pension"* for an employee who is at least age 55 but not yet 65 at termination of employment, and (3) a *"disability pension"* for an employee who terminates employment as a result of total and permanent disability.[25]

---

[25] Under the Pension Plan vesting is required, and the disability pension requires that an employee have a minimum number of years of Benefit Credit.

¶ 61.　Thus, the husband's disability is one of three conditions giving rise to a "pension" benefit under the Pension Plan. The Pension Plan defines "retirement" as follows: "The period after you qualify for a pension under the Plan and start to receive monthly pension payments is considered Retirement."

¶ 62.　The Pension Plan provides that the disabled husband collecting a disability pension receives the same monthly payment as a disability pension that he would receive as a "normal pension"[26] or as an "early pension" (that is, if the employee terminates employment when he is at least 62 years of age).[27] The disability pension the husband receives lasts for life.

---

[26] Under the terms of the Pension Plan in the record, the amount of a disability pension is the greater of $50 or the Plan participant's "normal pension" amount. Thus, the amount that the husband has received as a "disability pension" pursuant to the Pension Plan is the amount he would receive as a "normal pension," that is, the amount he would receive when he retired at the age of 65.

The Pension Plan provides the following calculation of the amount of the Normal Pension if certain qualifications are met:

> On or after January 1, 2002, the monthly amount of your Normal Pension equals the number of years of Benefit Credit you earned after May 31, 1995 multiplied by $92, plus the total years of Benefit Credit you earned prior to June 1, 1995 multiplied by $66.

[27] The amount of an "early pension" under the Pension Plan is determined "by, first, calculating the amount of the Normal Pension to which you would be entitled if you were age 65," and then:

(a) You will be eligible for an unreduced pension equal to your Normal Pension if payment of your Early Pension begins at or after age 62.

(b) If payment of your Early Pension benefit begins before age 62 but at or after age 55, your normal pension benefit will be

The husband's receipt of the disability pension does not reduce the amount of his "normal" or "early" pension.

¶ 63. Under the Pension Plan, in which the monthly amount paid to the husband as a disability pension is the same as the monthly amount paid as a normal pension and also is the same as the monthly amount paid as an early pension at age 62 for life, it is understandable that the circuit court concluded that the disability pension was a pension under the Marital Settlement Agreement. A more analytical and realistic approach, however, is to recognize that under the Pension Plan the disability pension has characteristics of both future lost wages and deferred compensation.

¶ 64. Prior to reaching the age of 62, the husband's disability pension is in the nature of compensation for lost wages the disabled husband no longer can earn. In contrast, the disability pension paid to the husband after he reaches the age of 62 is in the nature of a pension that the husband expected to receive had he not become eligible to receive the disability pension.

¶ 65. Considering these characteristics of the disability pension, we conclude that the disability pension that the husband received under the Pension Plan at termination of his employment prior to age 62 replaced the wages lost because of his physical inability to work. This portion of the husband's disability pension under the Pension Plan replaces post-divorce income and is not a retirement, pension, or deferred benefit account under the Marital Settlement Agreement. As post-

reduced by 1/4 of 1% for each full month (i.e., 3% for each full year) payments are made before the first month immediately following your 60th birthday and 1/12 of 1% for each full month (i.e., 1% for each full year) payments are made after you attain age 60 and before the first month immediately following your 62nd birthday.

divorce income, the disability pension is the husband's individual property not subject to the division of property under the Marital Settlement Agreement.

¶ 66. Regardless of the "disability pension," the husband is eligible under the Pension Plan for an unreduced normal pension at age 65 or an unreduced early pension at age 62.

■

¶ 67. The question then is whether the wife is entitled under the Marital Settlement Agreement to receive a portion of the husband's disability pension under the Pension Plan when the husband reaches age 62 or age 65.

¶ 68. The Marital Settlement Agreement is silent about the age at which the husband is required to receive a retirement, pension, or deferred benefit account. The language of the Marital Settlement Agreement states that the wife is entitled to receive her portion of retirement, pension, and deferred benefit accounts in the husband's name, if and when received by him.

¶ 69. Under the Pension Plan, when the husband attains the age of 62 he is eligible to receive the amount of an unreduced "normal pension." At age 62 the husband receives the disability pension that is the equivalent of an unreduced normal pension.

¶ 70. Because the husband is disabled, he need not elect an early or normal pension benefit; he receives the equivalent of a full pension under the Pension Plan at either age 62 or age 65. When the husband receives a disability pension under the Pension Plan after he reaches the age of 62, the monthly payment is precisely the amount he would have received had he terminated employment without a disability at age 62 or at age 65.

After the husband is 62 years of age, the disability pension effectively supplants and is a substitute for the early and the normal pension under the Pension Plan.

¶ 71. If, after the husband attains the age of 62, the husband's disability pension under the Pension Plan is viewed as a replacement for an early or normal pension under the Pension Plan and therefore as a retirement, pension, or deferred benefit account under the Marital Settlement Agreement, the expectations of both the husband and the wife are effectively protected under the Marital Settlement Agreement.[28] Neither party expected the husband to become disabled. The division of the retirement, pension, and deferred benefit accounts was calculated on the parties' assumption that the husband would receive retirement or pension income in the future.

¶ 72. Thus, we conclude that at the age of 62 when the husband became eligible to begin receiving an unreduced early pension equal to the normal pension and equal to the disability pension, the disability pension constitutes a retirement, pension or deferred benefit account under the Marital Settlement Agreement.

¶ 73. This holding places the husband and wife in the same position they would have been in had the husband not become disabled. This holding gives both the husband and wife exactly what they bargained for in the Marital Settlement Agreement: The husband retains, as the parties agreed, full right to earnings from his employment (here the disability payments are a substitute for earnings from employment); the wife is

---

[28] At the circuit court and before this court, the husband agreed that the wife's claim to payment of $912.88 monthly is cognizable under the Marital Settlement Agreement when he reaches the age 62. Petitioner-Appellant-Respondent's Brief at 6.

not entitled, under the Marital Settlement Agreement, to any part of the husband's earnings. The husband's retirement benefits under the Pension Plan are not reduced or otherwise affected by the disability payments made to the husband. "If and when" the husband "receives" his retirement benefits under the Pension Plan, the wife is to be paid $912.88 per month under the Marital Settlement Agreement. The husband is eligible to receive full retirement benefits at age 62 under the Pension Plan and "if and when" the husband receives retirement benefits at age 62 the husband pays his wife the monthly sum upon which they agreed in the Marital Settlement Agreement.

¶ 74. In sum, we conclude as follows:

(1) The Marital Settlement Agreement's reference to "all retirement, pension, and deferred benefit accounts" does not address disability benefits.

(2) The husband's disability pension under the Pension Plan, beginning when he was 53 years old and continuing until he attains the age of 62, replaces lost wages and therefore does not constitute a retirement, pension or deferred benefit account under the Marital Settlement Agreement. Thus, the Marital Settlement Agreement does not require the husband to pay to his wife any portion of the disability pension that he receives before he is 62 years old.

(3) When the husband reaches the age of 62 he is eligible to receive an unreduced "early pension" under the Pension Plan, which is the same amount as his "normal pension" would be at age 65, which in turn is the same amount as his disability pension has been. Thus, the husband's disability pension under the Pension Plan when he reaches the age of 62 constitutes a retirement, pension, or deferred benefit account under the Marital Settlement Agreement. And so, pursuant to

the Marital Settlement Agreement, when the husband reaches age 62, the husband must pay the wife $912.88 per month if and when the husband receives the disability pension under the Pension Plan.

¶ 75. Accordingly, we determine that the circuit court erred in holding the husband in contempt and in awarding the wife $83,072.08 plus interest.

¶ 76. We affirm the decision of the court of appeals reversing that portion of the order of the circuit court holding the husband in contempt and ordering him to make payments of $912.88 per month with interest to the wife from December 2001. We modify the decision of the court of appeals, however, to provide that under the Marital Settlement Agreement the wife is entitled to $912.88 per month if and when the husband receives the disability pension under the Pension Plan beginning the first month immediately following his 62nd birthday. The court of appeals erred in holding that the wife's monthly payment begins when the husband reaches his 65th birthday, rather than his 62nd birthday.

*By the Court.*—The decision of the court of appeals is modified and as modified affirmed.

¶ 77. PATIENCE DRAKE ROGGENSACK, J. (*dissenting*). This action was commenced on November 24, 2008, by Ellen Topolski's motion to hold Patrick Topolski in contempt of court for failing to comply with the Judgment of Divorce in two respects: (1) Patrick failed to pay her $912.88 per month from the $2,348 he has received every month in disability pension payments since December 2001; and (2) Patrick failed to pay the full equalization payment required by the Judgment of Divorce. I conclude that based upon the findings of the circuit court and the obligations created

in the Judgment of Divorce, Patrick is not in compliance with the Judgment of Divorce as Ellen alleged.

¶ 78. I write in dissent because the majority opinion erroneously: (1) ignores the circuit court's finding of fact that the parties agreed to divide the future receipt of disability pension payments at the time of divorce; and (2) mischaracterizes the disability pension payments from the Electrical Construction Industry Pension Plan (the Pension Plan) in order to avoid the actual issue presented, i.e., whether the parties agreed to divide the disability pension payments if and when Patrick received them. Accordingly, I respectfully dissent from the majority opinion.

## I. BACKGROUND

¶ 79. Patrick and Ellen were divorced after 24 years of marriage and the birth of three children. At the divorce, the parties entered into a Marital Settlement Agreement (the Settlement Agreement) that the circuit court incorporated into the Judgment of Divorce. In the Settlement Agreement, the parties stipulated to waive maintenance and to the division of their property. Patrick received the major assets of the parties: their home and "[a]ll retirement, pension, and deferred benefit accounts in his name, less the sum of $912.88 to be paid by [Patrick] to [Ellen] per month, if and when received by him." Ellen was to receive a $55,000 equalization payment as her half of the parties' equity in their home. Within 90 days of the divorce, $40,000 was to be paid, and the remaining $15,000 was to be paid within three years.

¶ 80. Apparently, Patrick paid the initial $40,000 and $5,000 of the remaining $15,000 that was due under the judgment before this action was commenced.

After Ellen commenced this lawsuit, Patrick paid an additional $5,000. However, on July 30, 2009, when the court order now under review was entered, $5,000 remained unpaid. In addition, Patrick has not made any payments to Ellen from the $213,688 in disability pension payments he received.

¶ 81. In response to Ellen's motion, Patrick moved to "revise" the judgment, asking the court to excuse him from making monthly payments to Ellen from the disability pension. He did not deny that he had failed to make the equalization payment required by the Judgment of Divorce.

¶ 82. At the hearing, the Pension Plan under which Patrick's disability pension is paid was received as Exhibit 1. Neither party argued that a different pension plan or a pension plan with terms different from Exhibit 1 was relied upon when the Settlement Agreement was made. Both parties testified, as did an expert on pensions.

¶ 83. Ellen testified that she had heard that Patrick was receiving pension payments. She sought legal assistance to determine if this was true and if so, to determine "where my portion of it was if he was collecting it." She said she became suspicious that he was receiving pension payments because he was not working. She remarked, "I don't know how you can not work and not collect some kind of money."

¶ 84. Counsel for Patrick asked Ellen, "Ma'am, have you ever sought a qualified domestic relations order from a court to enforce your rights to have a piece of Mr. Topolski's pension?" Ellen answered, "That's why I hired an attorney."

¶ 85. Counsel for Patrick asked him about the disability pension payments:

Q Did you have any intent or understanding about disability benefits?

A At the time of my divorce?

Q Yes, sir.

A No.

Q You never had a conversation you can recall with her when she said when I retire or words to that effect?

A No.

. . .

Q Do you draw a distinction between a retirement time in your life or a disability time in your life?

A I retired because of a disability, that's all I can say. Normally I wouldn't. I wouldn't have retired when I did. That's all I can say.

Patrick did not testify that a disability pension was not among the pensions that were provided by the Pension Plan at the date of divorce.

¶ 86. In response to his counsel's questions, Patrick said in addition to the $2,348 in pension payments he receives each month, he also receives Social Security disability payments of approximately "2,000 bucks" per month. Patrick also said that he has an annuity worth approximately $20,000 that was "paid into over the course of the years [he] was working," which he can receive payments from when he is 59–1/2 years old. When counsel for Ellen asked, "Did you own the annuity at the time of your divorce?" Patrick responded, "It started right around that time. There

was very little in there at that time."[1] Patrick further testified that his home was assessed at $250,000 to $260,000 and that it had a mortgage of approximately $100,000.

¶ 87. At the conclusion of the hearing, counsel for Ellen submitted an exhibit showing the attorney fees that she had incurred to enforce the Judgment of Divorce.[2]

¶ 88. The circuit court found that Patrick was not in compliance with the Judgment of Divorce in two respects: (1) he has been receiving $2,348 per month in "benefits under his pension plan" since December of 2001 without paying Ellen $912.88 per month as the judgment required; and (2) Patrick has not made the full equalization payment for Ellen's interest in the party's home, which home was awarded to Patrick.

¶ 89. The circuit court found that the disability pension payments that Patrick has been receiving were "what had been awarded to [Ellen] per the parties' own agreement going back to the time of their divorce." Patrick had argued that the disability pension payments he was receiving were income. The court disagreed, explaining, "I disagree this is taking income from him as opposed to simply enforcing the property division itself."

¶ 90. Patrick appealed and the court of appeals reversed that portion of the circuit court order that

---

[1] It is not clear whether Patrick's annuity was disclosed at the time of divorce.

[2] Paragraph XIII.C. of the Settlement Agreement provided that if court enforcement of the Judgment of Divorce was required, the party who was not in compliance with the judgment would pay the other party's "actual attorney fees incurred in bringing the action."

related to the disability pension payments.[3] The court of appeals said the issue presented was "whether those benefits are retirement or disability benefits."[4] It concluded that the payments were disability benefits and therefore, Patrick was not obligated to pay any portion of it to Ellen.[5]

¶ 91. The court of appeals did not address the issue the case actually presents, which is whether, at the time of divorce, the parties agreed to a division of disability pension payments if and when Patrick receives them. The court of appeals did not disturb the circuit court's determination that Patrick had failed to make the full equalization payment required by the Judgment of Divorce.

## II. DISCUSSION

### A. Standard of Review

¶ 92. This case involves the review of the circuit court's findings of fact and the court's interpretation of the Judgment of Divorce that incorporates the Settlement Agreement of the parties. We affirm a circuit court's findings of fact unless they are clearly erroneous. *Steinbach v. Green Lake Sanitary Dist.*, 2006 WI 63, ¶ 10, 291 Wis. 2d 11, 715 N.W.2d 195. Interpretation of a judgment is a question of law. *Jacobson v. Jacobson*, 177 Wis. 2d 539, 546–47, 502 N.W.2d 869 (Ct. App. 1993). Where we conclude that a judgment is ambiguous, we will defer to the circuit court's interpretation of its own ambiguous judgment. *Schultz v.*

---

[3] *Topolski v. Topolski,* No. 2009AP2433–FT, unpublished order, at 1–2 (Wis. Ct. App. May 5, 2010).

[4] *Id.* at 2.

[5] *Id.*

*Schultz,* 194 Wis. 2d 799, 808, 535 N.W.2d 116 (Ct. App. 1995). We independently interpret written documents, such as the Pension Plan, as a question of law, but benefitting from previous court interpretations. *Solowicz v. Forward Geneva Nat'l, LLC,* 2010 WI 20, ¶ 13, 323 Wis. 2d 556, 780 N.W.2d 111.

## B. Finding of Fact

¶ 93. The circuit court found that the disability pension payments that Patrick has been receiving were "what had been awarded to [Ellen] per the parties' own agreement going back to the time of their divorce" and that her efforts were "simply enforcing the property division itself." This finding shows the circuit court's determination that the parties intended to allocate as property in their divorce the division of all payments Patrick received when he was no longer working, including the disability pension payments. This finding is not clearly erroneous; rather, it is supported by Ellen's testimony and uncontradicted by Patrick's testimony.[6] Accordingly, I would affirm it. *Steinbach,* 291 Wis. 2d 11, ¶ 10.

## C. Judgment of Divorce

¶ 94. The circuit court interpreted the Judgment of Divorce that incorporated the Settlement Agreement in light of the payments Patrick was receiving under the Pension Plan. The court utilized the testimony of both parties, an expert in pension plans, the Settlement

---

[6] Ellen said that she sought legal assistance to determine if Patrick was receiving pension payments and if so "where my portion of it was if he was collecting it." Patrick simply said he had no understanding about disability pension payments when the divorce was granted and that he retired due to a disability.

Agreement and the Pension Plan. The circuit court noted that the relevant provision of the Settlement Agreement divided "[a]ll retirement, pension, and deferred benefit accounts" in Patrick's name.

¶ 95. The circuit court determined that the disability pension payments Patrick was receiving fell within that listing. It held Patrick in contempt of court for failing to pay the full equalization payment and for failing to pay Ellen $912.88 from each $2,348 disability pension payment he received. The court ordered payment in full of amounts then due and $3,429.50 in attorney fees that this enforcement action generated.

¶ 96. On review, we must interpret the Settlement Agreement, which was incorporated into the Judgment of Divorce. If it is ambiguous because it does not separately describe disability pensions from the collective term, "all pensions," or because Patrick had no understanding about the disability pension at the time of divorce, then I will defer to the circuit court's interpretation of the Settlement Agreement because it is part of the court's own Judgment of Divorce. *See Schultz*, 194 Wis. 2d at 808. If the Settlement Agreement is unambiguous, then I will review what it requires independently of the decision of the circuit court. *Jacobson*, 177 Wis. 2d at 547.

¶ 97. Whether I defer to the interpretation of the circuit court or apply an independent review of the Judgment of Divorce as it incorporates the Settlement Agreement, I conclude that the circuit court correctly interpreted what was required under the Judgment of Divorce.

¶ 98. The Pension Plan is relevant to the interpretation of the Judgment of Divorce. Both parties agreed that it was the operative document in regard to

the pension payments that Patrick has been receiving, even though the Pension Plan admitted into evidence is dated December 2007.

¶ 99. The Pension Plan states, "The period after you qualify for a pension under the Plan and start to receive monthly pension payments is considered Retirement."[7] The Pension Plan also describes "Disability Pension" in the section entitled "ABOUT PENSION BENEFITS."[8] Therefore, under the Pension Plan from which Patrick is paid, an employee achieves "retirement" once the employee receives any type of pension payments, including payments from a disability pension.

¶ 100. The Settlement Agreement covers "[a]ll retirement, pension, and deferred benefit accounts" in Patrick's name. It is beyond dispute that the disability pension payments he has been receiving are from a pension described in the Pension Plan. The parties did not exclude any type of pension payments; rather, they agreed to divide "all" pension payments "if and when" Patrick received them.

¶ 101. When reviewing the majority opinion, it is important not to lose track of the issue presented by this review. That issue is whether the parties agreed to divide the disability pension payments when they agreed to divide "*all*" pensions "if and when" Patrick receives payments.

¶ 102. The majority opinion never addresses this issue. Instead, the majority opinion does a clever bait-and-switch wherein it sets out an irrelevant conclusion on which its decision turns.

---

[7] Electrical Construction Industry Pension Plan (the Pension Plan), at 2.

[8] *Id.* at 12–13.

¶ 103. To explain, the majority opinion concludes that the disability pension is not divisible because it "replaces lost wages and therefore does not constitute a retirement, pension, or deferred benefit account under the Marital Settlement Agreement."[9] The majority opinion concludes that "[a]s such, these payments are not assets divisible at dissolution of the marriage."[10] However, whether the disability pension payments replace lost wages or are characterized as income has *nothing* to do with the issue presented for our review, which is whether the parties *agreed* to divide the disability pension payments "if and when" Patrick received them.

¶ 104. Furthermore, the amounts of the pension payments that Patrick has received from his disability pension are not comparable to the amounts payable as social security disability, which amounts are based on statute. Rather, the uncontroverted evidence shows that the amount of Patrick's pension payment was determined under the terms of the Pension Plan, based on his past years of employment. For example, the Pension Plan states, "Benefit Credit is earned for your work in Covered Employment. The amount of your pension benefit will be based on the total years of Benefit Credit you have at retirement."[11] The Pension Plan further provides, "Benefit Credit is used in the calculation of the amount of your pension benefit. The monthly amount of your pension will be based on the number of Benefit Credits you have. *Benefit Credit also is counted in determining eligibility for Early Retire-*

[9] Majority op., ¶ 6.

[10] *Id.*, ¶ 46.

[11] Pension Plan, at 2.

*ment and Disability Pensions."*[12] The disability pension payments are a property right created by the Pension Plan in the same way as a property right to a normal pension is created—both are based on past years of service.[13]

¶ 105. Furthermore, both a normal pension and a disability pension are income to the recipient. *See Barker v. Kansas*, 503 U.S. 594, 603 (1992); Wis. Stat. § 71.01(13). Therefore, the majority opinion's characterization of the disability pension payments as income or lost wages is irrelevant to determining whether Patrick owed $912.88 per month from every monthly pension payment of $2,348 that he received. He owed it because the parties agreed to divide *all* pension payments if and when he received them.

¶ 106. To explain this latter point further, we have recognized that some disability pensions are separate property to compensate for loss of *earning capacity* and therefore division cannot be compelled.[14] *Leighton v. Leighton,* 81 Wis. 2d 620, 636, 261 N.W.2d 457 (1978) (remarking that Mr. Leighton was not required to

---

[12] *Id.* at 4 (emphasis added).

[13] I note that the Pension Plan is an ERISA defined benefit plan. *See* the Pension Plan, at 2, 29, 32. Accordingly, Patrick's right to payments under the Pension Plan is an interest in the receipt of payments when the Pension Plan's conditions are met that is protected under federal law. *Cent. Laborers' Pension Fund v. Heinz,* 541 U.S. 739, 743 (2004); *Lockheed Corp. v. Spink,* 517 U.S. 882, 887 (1996).

[14] The majority opinion cites *Leighton v. Leighton,* 81 Wis. 2d 620, 637, 261 N.W.2d 457 (1978), as authority for the proposition that a disability pension replaces lost wages. Majority op., ¶ 46 n.20. However, that is not what *Leighton* holds. *Leighton* addresses lost earning capacity, not lost wages. *Leighton,* 81 Wis. 2d at 636.

divide as marital property his Veterans' disability pension because it was "a federally-provided replacement for earning capacity lost by reason of injuries sustained while in military service"). Other Wisconsin appellate courts have divided disability pensions against the wishes of the primary recipient. *Loveland v. Loveland,* 147 Wis. 2d 605, 612, 433 N.W.2d 625 (Ct. App. 1988) (concluding that "retirement pay based on disability but which replaces 'retirement' pension and is partly computed on service longevity and rank" is divisible). However, *no Wisconsin appellate decision* has ever held that the parties cannot *agree* as part of their divorce settlement to divide disability pension payments, subject to the approval of the circuit court.

¶ 107. The Settlement Agreement now before us, which the circuit court approved by incorporating it into the Judgment of Divorce, is an agreement to divide *all pensions* in Patrick's name. The parties were free to divide the disability pension as they saw fit, subject to circuit court approval, and they did so.

¶ 108. Accordingly, I conclude that the circuit court correctly determined that Patrick failed to comply with the Judgment of Divorce when he did not pay Ellen $912.88 each month from the disability pension payments he received. I respectfully dissent from the majority opinion that concludes to the contrary.

### III. CONCLUSION

¶ 109. I conclude that based upon the findings of the circuit court and the obligations created in the Judgment of Divorce, Patrick is not in compliance with the Judgment of Divorce in two respects: (1) Patrick failed to pay Ellen $912.88 per month from the $2,348 he has received every month in disability pension

payments since December 2001; and (2) Patrick failed to pay the full equalization payment required by the Judgment of Divorce.

¶ 110. I write in dissent because the majority opinion erroneously: (1) ignores the circuit court's finding of fact that the parties agreed to divide the future receipt of disability pension payments at the time of divorce; and (2) mischaracterizes the disability pension payments from the Pension Plan in order to avoid the actual issue presented, i.e., whether the parties agreed to divide the disability pension payments if and when Patrick receives them. Accordingly, I respectfully dissent from the majority opinion.

¶ 111. I am authorized to state that Justice DAVID T. PROSSER joins this dissent.