COURT OF APPEALS
DECISION
DATED AND FILED

March 22, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2022AP523**

STATE OF WISCONSIN

Cir. Ct. No.  2020FA676

IN COURT OF APPEALS
DISTRICT II

IN RE THE MARRIAGE OF:

JEFFREY A. CARETTA,

  PETITIONER-APPELLANT,

 V.

DEBRA M. CARETTA,

  RESPONDENT-RESPONDENT.

APPEAL from an order of the circuit court for Kenosha County: CHAD G. KERKMAN, Judge. *Reversed.*

Before Gundrum, P.J., Neubauer and Lazar, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.  Jeffrey A. Caretta appeals from a circuit court order finding him in contempt of court for his alleged failure to pay $55,000 to Debra M. Caretta in accordance with their Marital Settlement Agreement (MSA). The circuit court's finding of willful nonpayment was based on a legally erroneous interpretation of the parties' agreements incorporated into the court's judgment of divorce, which means its contempt order constituted an erroneous exercise of discretion.  We therefore reverse.

¶2    Jeffrey served Debra with a petition for divorce in October, 2020. The parties stipulated to an MSA that included an "equalization of marital property division"—a $55,000 payment from Jeffrey to Debra:

> A payment of $55,000 shall be paid from Petitioner to Respondent within 90 days from the date of divorce.  In the event Petitioner fails to provide this equalization payment within the allotted time, Respondent may petition the court for an order that the marital residence be immediately put on the market for sale and the equalization payment coming from the net proceeds from the sale of the home.

The circuit court commissioner approved the MSA, signing it on March 4, 2021. Through their attorneys, Jeffrey and Debra then negotiated and approved a Qualified Domestic Relations Order (QDRO) enabling Debra to receive $55,000 as a lump-sum payment from Jeffrey's retirement plan.  The QDRO stated that Debra, as the "alternate payee who is the spouse or former spouse of the [plan] participant[,] … will be required to pay the applicable federal, state, and local income taxes on such distributions."  The circuit court signed the QDRO on March 30.  The final judgment of divorce, signed by the commissioner on April 13, 2021, expressly incorporated the MSA by reference along with "the Agreements and Stipulation and Order."

¶3    Pursuant to the QDRO, Jeffrey transferred exactly $55,000 from his retirement plan to a retirement account in Debra's name on April 23, 2021.  On May 5, Debra withdrew the entire balance of her account, which had dropped slightly to $54,905.64.  The plan administrator withheld $10,981.13 for federal taxes and sent Debra a check for $43,924.51.

¶4    In August, 2021, Debra filed a motion seeking an order from the circuit court finding Jeffrey "in [c]ontempt for failing to pay the equalization payment of $55,000 within" ninety days of the date of divorce, requiring him to "provide the remaining balance" within seven days of such a finding, and requiring him to pay her attorney's fees for the motion.  At the February 2, 2022 hearing on Debra's motion, the circuit court agreed with Debra's argument that she had "only received $43,924.51," stating that it was "interpreting this paragraph [in the MSA] for him to get $55,000 to her pocket and it doesn't say anything about net 55,000 or gross 55,000 before taxes."  The court excluded evidence extrinsic to the MSA and, when Jeffrey's counsel referred to the QDRO that both Debra's counsel and the court had approved, it stated, "I don't know anything about this.  All I know is I'm reading this paragraph [in the MSA]."[1]  The court determined that Jeffrey's failure to pay the full $55,000 was intentional "because the paragraph [in the MSA] says get $55,000 to her pocket and he didn't do that."  The court stayed its two-day jail sentence for Jeffrey, stating that he could purge the contempt by paying the full amount within sixty days.  Finally, the court

---

[1]  Although it was in the record, neither party provided the circuit court with a copy of the agreed-upon QDRO, which explicitly provided that Debra was to pay the taxes on any distribution.  Nor did they advise the court of the QDRO's terms.

awarded Debra attorney fees of $750, reducing the award from her request for $2,000. Jeffrey appeals.

¶5    In actions affecting the family, the circuit court has the "authority to do all acts and things necessary and proper in those actions and to carry … orders and judgments into execution." WIS. STAT. § 767.01(1) (2021-22).[2] This includes the authority to find a person in contempt for intentionally disobeying an order of the court, such as a divorce judgment. *See* WIS. STAT. § 785.01(1)(b); *Tensfeldt v. Haberman*, 2009 WI 77, ¶35, 319 Wis. 2d 329, 768 N.W.2d 641 (stating that violating a divorce judgment "is unlawful and can subject the violator to sanctions for contempt of court"). When this court reviews a circuit court's contempt order, it does so under the erroneous exercise of discretion standard. *Benn v. Benn*, 230 Wis. 2d 301, 308, 602 N.W.2d 65 (Ct. App. 1999). "A circuit court erroneously exercises its discretion if it makes an error of law." *Topolski v. Topolski*, 2011 WI 59, ¶27, 335 Wis. 2d 327, 802 N.W.2d 482. In this case, the circuit court exercised its discretion based on its interpretation of the parties' MSA, which had been incorporated into the court's final judgment of divorce along with their approved "Agreements and Stipulation and Order." Interpretation of these documents presents a question of law, which we review de novo. *See id.*, ¶28.

¶6    Thus, we begin with the judgment of divorce, which is the order Debra alleged that Jeffrey violated in her motion for contempt. Divorce judgments are to be construed in the same way as other written instruments, and we consider "the whole record in construing a divorce judgment." *Washington v.*

---

[2] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

***Washington***, 2000 WI 47, ¶17, 234 Wis. 2d 689, 611 N.W.2d 261. The stipulated MSA, incorporated into the judgment at issue here, required Jeffrey to pay Debra $55,000. But the MSA did not explicitly require that Jeffrey's $55,000 payment to Debra be to "her pocket" as opposed to her retirement fund. As such, the parties' agreed-upon MSA was ambiguous. However, the parties also agreed in the QDRO that Jeffrey would transfer $55,000 to Debra and that she would pay the taxes on a distribution. The court approved the QDRO for this amount, which was then incorporated into the judgment of divorce. The court's determination that the parties' agreement set forth in the MSA unequivocally required a full $55,000 payment despite the parties' agreed-upon and court-approved QDRO constituted legal error. *See **Levy v. Levy***, 130 Wis. 2d 523, 533, 388 N.W.2d 170 (1986) ("In the guise of construing a contract, courts cannot insert what has been omitted …."), *amended*, 133 Wis. 2d 33, 393 N.W.2d 462 (1986). Thus, the court's interpretation cannot be a proper basis for holding Jeffrey in contempt.

¶7      Indeed, the record is clear that Jeffrey did make a payment of $55,000 to Debra; he did so by transferring that sum to her retirement account as they both agreed in the QDRO. Debra's immediate withdrawal of that money had tax implications (which were hers to bear, also pursuant to the QDRO). We cannot conclude on this record that Jeffrey disobeyed the divorce judgment with respect to the parties' agreement regarding the $55,000 payment, let alone that he did so "intentional[ly]" as is required to hold him in contempt. *See* WIS. STAT. § 785.01(1); *see also **Anderson v. Anderson***, 72 Wis. 2d 631, 647, 242 N.W.2d 165 (1976) ("The essential finding in such a contempt must be that the … refusal to pay is willful and with intent to avoid payment.") (citation omitted). The circuit court's determination that there was an intentional nonpayment because "the [MSA] paragraph says get $55,000 to her pocket and he didn't do that" is based on

an erroneous interpretation of the MSA and QDRO and a failure to acknowledge that Jeffrey did pay $55,000 to Debra as detailed and agreed to in the QDRO.

¶8 Because the circuit court granted Debra's motion to hold Jeffrey in contempt of court based on an erroneous interpretation of the parties' agreements, its ruling constitutes an erroneous exercise of discretion. *See **Topolski***, 335 Wis. 2d 327, ¶27.

*By the Court.*—Order reversed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.