COURT OF APPEALS
DECISION
DATED AND FILED

March 28, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP1660**

Cir. Ct. No. **2015CV65**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

---

DSG EVERGREEN FAMILY LIMITED PARTNERSHIP,

　　PLAINTIFF-RESPONDENT,

　V.

TOWN OF PERRY,

　　DEFENDANT-APPELLANT.

---

　　　　　APPEAL from an order of the circuit court for Dane County: MARIO WHITE, Judge. *Affirmed.*

　　　　　Before Kloppenburg, P.J., Blanchard, and Taylor, JJ.

　　　　　**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM. This case concerns the interpretation and application of language in a condemnation petition ("the petition") pursuant to which the Town of Perry (the "Town") ultimately acquired property from DSG Evergreen Family Limited Partnership ("DSG") by eminent domain to create a public park.  The language provides that the Town will replace an existing field road (the "old road") that is on the acquired property with a new field road (the "new road"), which would afford access to DSG property, and further provides that the new road "will be built to the same construction standards as the existing field road."  The circuit court concluded that this language requires the Town to build an "in-kind road," which DSG can use "for the same functions as [it] used the" old road, in light of the new road's different location and topography and the additional use of the new road for the park.  The court also made findings specifying the new road standards to serve those functions.

¶2      On appeal, the Town argues that "the same construction standards as" means the specifications set forth in the Town and Dane County ordinances that applied to the old road, including particularly the Town driveway ordinance. In the alternative, the Town argues that three of the circuit court's findings specifying standards of an "in-kind road" are clearly erroneous.

¶3      We conclude that the disputed language in the petition is ambiguous and, consistent with controlling case law, we construe the language against the Town and in favor of the interpretation of the circuit court.  We conclude that this interpretation, which favors DSG's position on appeal, is a reasonable one.  Under this interpretation, the petition requires that the new road be built with the same physical characteristics as the old road, but modified so as to preserve what had been DSG's prior use of the old road for agricultural and personal purposes, taking into account the changes in the new road's location and topography and the

additional public use of the new road for the park. We further conclude that the circuit court's three specifications challenged by the Town, concerning the width of the new road, the width of the apron where the new road connects to the county road, and the construction of stormwater management facilities, are not clearly erroneous. Accordingly, we affirm.

## BACKGROUND

¶4 This appeal follows extensive related litigation between the Town and DSG over a number of years, reflected in numerous court opinions. Most pertinent here is the following. In 2006, the Town filed a Petition for Condemnation Proceedings to acquire 12.13 of approximately 92 acres of land owned by DSG in order to establish the Hauge Historic District Park. In 2008, the Town accomplished the acquisition pursuant to an Award of Compensation that contains the same language at issue as the petition.

¶5 The 12.13 acres includes the old road, which DSG used to access its land for primarily agricultural purposes and for "a future residence and farm building." As to the old road, the petition provides as follows, with emphasis now on a key sentence:

> The Town will replace the existing field road on the 12.13 acre parcel to be acquired with a new field road from Highway Z along the northern boundary of the Hague Church Park boundary to the western boundary of the proposed Park in order to provide access to the Owner's other lands in the Town of Perry and for park-related purposes …. *This field road will be built to the same construction standards as the existing field road*.

As described by this provision, the property to be acquired by the Town includes the old road that afforded access to DSG's property. The provision indicates that the Town will replace the old road with a new road in a different location, to

afford access to the DSG property remaining after the acquisition, as well as to afford public access to the park.

¶6    The Town completed construction of the new road in 2010. The Town subsequently adopted a resolution declaring the road open for "'the benefit of the public, adjacent property owners and for park related purposes.'" *DSG Evergreen Fam. Ltd. P'ship v. Town of Perry*, 2020 WI 23, ¶10, 390 Wis. 2d 533, 939 N.W.2d 564.

¶7    In 2015, DSG filed a complaint against the Town for declaratory judgment or damages, alleging that the new road differs from the old road in several respects contrary to the requirement in the petition that the new road "be built to the same construction standards as" the old road. In 2017, the circuit court dismissed the complaint as barred by claim preclusion, and this court affirmed.[1] *DSG Evergreen Fam. Ltd. P'ship v. Town of Perry*, No. 2017AP2352, unpublished slip. op. (WI App Dec. 20, 2018). Our supreme court reversed, concluding that prior litigation between the parties does not preclude DSG's claim regarding the specific meaning of the disputed language in the petition. *DSG Evergreen*, 390 Wis. 2d 533, ¶19. The supreme court remanded to the circuit court to determine the meaning of "the same construction standards as." *Id.*

¶8    On remand, the circuit court concluded that the language of the petition unambiguously requires that the Town provide DSG with "an in-kind road," and held an evidentiary hearing to determine the specific standards for "an in-kind road." In a written order following the hearing, the court found that the

---

[1] The Honorable Richard G. Niess entered the dismissal order.

new road "cannot exactly match" the physical characteristics of the old road because the new road is in a different location with a different topography and serves both the park as well as DSG. The court found that DSG used the old road for primarily agricultural purposes, and determined that DSG should be able to use the new road for the same agricultural and personal purposes as it used the old road.

¶9    The circuit court found that the parties had stipulated in the course of this litigation to the following:  (1) the new road will be widened to 21 feet; (2) the maximum slope of the new road will be reduced to 8.29%; (3) the Town will construct at least one turn-out; (4) the Town will construct one turn-around area at the end of the new road; and (5) if these changes result in the new road exceeding 20,000 square feet of impervious surfaces, the Town will construct stormwater management facilities as required by the Dane County stormwater ordinance.

¶10    Based on the evidence presented at the hearing and the parties' stipulations, the circuit court ordered that the Town:  (1) widen the new road for its entire length "to an average of 21 feet"; (2) decrease the slope of the new road to a maximum of 8.29%; (3) construct at least one turn-out at least 70 feet long to accommodate emergency vehicles and permit vehicles, specifically DSG's agricultural vehicles, to pass one another; (4) construct a turn-around area at least 120 feet across; (5) install stormwater management facilities, as required by the Dane County stormwater ordinance, if the new road's impervious surface is 18,000 square feet or more; (6) construct culverts of a type and shape as agreed to by the parties; and (7) widen the apron (where the new road and the county road meet) to accommodate the agricultural vehicles currently used to farm the DSG property.

¶11    The Town appeals.

## DISCUSSION

¶12    The Town argues that the circuit court erroneously interpreted the language "the same construction standards as" in the petition.  In the alternative, the Town argues that, under the court's interpretation, three of the court's specifications of the standards are clearly erroneous.  We address each issue in turn.

### I.    Interpretation of "the same construction standards as."

¶13    We review the interpretation of a contract de novo.  *Ford Motor Co. v. Lyons*, 137 Wis. 2d 397, 460, 405 N.W.2d 354 (Ct. App. 1987).  "The general rule as to construction of contracts is that the meaning of particular provisions in the contract is to be ascertained with reference to the contract as a whole."  *MS Real Est. Holdings, LLC v. Donald P. Fox Fam. Tr.*, 2015 WI 49, ¶38, 362 Wis. 2d 258, 864 N.W.2d 83.  We interpret the language of a contract "according to its plain or ordinary meaning, … consistent with 'what a reasonable person would understand the words to mean under the circumstances.'"  *Id.*, ¶37 (quoted source omitted).  In other words, "[w]e interpret contracts to give them common sense and realistic meaning."  *Id.*, ¶38 (internal quotation marks and quoted source omitted).  "A dictionary may be utilized to guide the common, ordinary meaning of words."  *Noffke ex rel. Swenson v. Bakke*, 2009 WI 10, ¶10, 315 Wis. 2d 350, 760 N.W.2d 156.

¶14    If a contract provision is unambiguous, meaning that it is "susceptible of just one reasonable interpretation," we will construe it consistent with that unambiguous meaning.  *Town Bank v. City Real Est. Dev., LLC*, 2010

WI 134, ¶33, 330 Wis. 2d 340, 793 N.W.2d 476. If a contract provision is ambiguous, we will construe the provision against the drafting party. *Maryland Arms Ltd. P'ship v. Connell*, 2010 WI 64, ¶23, 326 Wis. 2d 300, 786 N.W.2d 15; *see also Standard Theatres, Inc. v. State*, 118 Wis. 2d 730, 741-42, 349 N.W.2d 661 (1984) (stating that, because the exercise of eminent domain is an "extraordinary power," ambiguous language in a condemnation proceeding should be strictly construed against the drafter). Whether a contract is ambiguous is a question of law. *Borchardt v. Wilk*, 156 Wis. 2d 420, 427, 456 N.W.2d 653 (Ct. App. 1990).

## *Analysis*

¶15 To repeat, the petition provides that the Town will replace the old road with a new road at a different location, and that, "[t]his field road will be built to the same construction standards as the existing field road."

¶16 The petition does not define the phrase "the same construction standards as" or any term within that phrase. We present the following representative dictionary definitions of these commonly used words. "Same" means "identical." *See Same*, Dictionary.com, https://www.dictionary.com /browse/same (last visited March 20, 2024). "Construction" means: "the way in which something is built or put together." THE AMERICAN HERITAGE COLLEGE DICTIONARY, (3rd ed. 1993); *see also Construction*, Dictionary.com, https://www.dictionary.com/browse/construction (defining "construction" as "the way in which a thing is constructed") (last visited March 20, 2024). "Standard" means "something considered by an authority or by general consent as a basis of comparison." *Standard*, Dictionary.com, https://www.dictionary.com /browse/standard (last visited March 20, 2024); *see also* BLACK'S LAW

DICTIONARY (6th ed. 1991) (defining "standard" as "[a] type, model, or combination of elements accepted as correct or perfect").

¶17 Consistent with these definitions, one reasonable interpretation of the disputed language would read "the same construction standards as" as referring to the specifications identical to those that applied to the old road as designated by a regulatory or governmental authority in a rule, ordinance, or statute. In other words, the petition requires the Town to build the new road so as to meet the specifications mandated by the Town and Dane County ordinances that applied to the old road when it was constructed.[2] The Town contends that this is the proper interpretation. However, as we next explain, this is not the only reasonable interpretation of the disputed language.

¶18 A second reasonable interpretation would read "the same construction standards as" as referring to the way that the old road was built. Under this interpretation, the way the old was built would serve as the basis of comparison for the way that the new road should be built, with the result that the new road would have the identical physical characteristics as the old road.

¶19 A third reasonable interpretation would read "the same construction standards as" as referring to the functional equivalent of the old road, using the old road as a model, so that the new road can be used in the same way the old road was used. Under this interpretation, the physical characteristics of the old road would be the starting point, but the new road would represent a modification under which DSG's prior uses of the old road would be preserved, taking into account

---

[2] The old road was constructed pursuant to access permits obtained by DSG in 2000 and 2001.

the differences in the new road's location and topography and the new road's additional purpose of serving the park.

¶20    The circuit court appeared to adopt this third interpretation. It determined that the language requires "an in-kind road," using as a starting point the same physical characteristics as the old road (by requiring that the new road have the same width, slope, and culverts as the old road), but modified so as to allow DSG to use the new road for the same primarily agricultural purposes, including the use of the road by agricultural vehicles (by requiring a larger apron) and to accommodate the additional uses related to the park (by requiring the turn-out and turn-around area).

¶21    Because "the same construction standards as" is "susceptible to more than one reasonable interpretation," we conclude that the language in the petition is ambiguous. *See* ***Town Bank***, 330 Wis. 2d 340, ¶33. Accordingly, we interpret the language against the Town as the drafter, and in favor of the interpretation adopted by the circuit court, which is supported by DSG on appeal and which we conclude is one reasonable interpretation. Under this interpretation, the petition requires that the Town build an "in-kind road," with the same physical characteristics as the old road, but modified so as to preserve DSG's prior use of the road for agricultural and personal purposes based on the changes in the new road's location and topography and the additional use of the new road for the park.

¶22    The Town counters that "the same construction standards as" is not ambiguous. Specifically, the Town argues that this language unambiguously refers to the requirements set forth in Town and Dane County ordinances, particularly the Town driveway ordinance, that applied to the old road when it was

constructed pursuant to the 2000 and 2001 access permits. This argument fails for at least the following reasons.

¶23    First, the Town asserts that "construction standards" is a technical term that, "in the context of road construction," "is understood by professionals to mean governmental standards," specifically, the Town driveway ordinance. *See Topolski v. Topolski*, 2011 WI 59, ¶39, 335 Wis. 2d 327, 802 N.W.2d 482 (discussing the interpretation of contractual terms "in the profession or business to which they relate"). However, the Town points to nothing within the four corners of the petition that supports the notion that it is a road construction agreement between professionals who would understand the phrase "construction standards" to refer to the Town driveway ordinance. Rather, it is a petition by a municipality to commence a condemnation proceeding against a private property owner, in which the municipality promises to replace an existing field road. Moreover, the Town's interpretation would require replacing "same construction standards as" with "same construction standards contained in ordinances that applied to," and we cannot add words that the drafter did not use in order to determine that contract language is unambiguous. *See North Gate Corp. v. National Food Stores, Inc.*, 30 Wis. 2d 317, 323, 140 N.W.2d 744 (1966) ("We cannot ignore the [drafter]'s failure to use an obvious term, especially where it is the [drafter] who is urging a tenuous interpretation of a term in order to make it applicable to a situation which would clearly have been covered if the obvious term had been chosen."); *Milwaukee Police Supervisors Org. v. City of Milwaukee*, 2023 WI 20, ¶24, 406 Wis. 2d 279, 986 N.W.2d 801 ("'It must be borne in mind that the office of judicial construction is not to make contracts or to reform them, but to determine what the parties contracted to do; not necessarily what they intended to agree to,

but what, in a legal sense, they did agree to, as evidenced by the language they saw fit to use.'") (quoted source omitted).

¶24 The Town next argues that it is not reasonable to interpret "standards" as referring to "physical characteristics" because this interpretation would render "construction standards" superfluous. That is, this interpretation would read the petition to require only that the new road be built the same as the old road. To prevent that result, according to the Town, "the same construction standards" must mean the specifications mandated by ordinance, while "as the existing field road" must mean the physical road to which the ordinance specifications applied. However, under the second reasonable interpretation posited above, it is precisely the concept of "physical characteristics" that could reasonably be embraced by the term "construction standards" to identify the aspects of the old road that the Town had to replicate. Alternatively, under the third reasonable interpretation posited above, consistent with our review of the dictionary definitions, "the same construction standards as" could reasonably mean that the old road serves as a "model" in terms of both physical characteristics and usage that the Town was obligated to replicate. In other words, when considered together, the phrase "the same construction standards" and the phrase "the existing field road," could reasonably be interpreted as requiring that the physical characteristics of the old road set the construction standards for the new road as a point of comparison or model, modified as necessary to accommodate changes in the new road's location, topography, and usage.

¶25 Finally on this issue, the Town argues that certain language in engineering reports prepared by DSG's consultants as part of this condemnation proceeding, along with statements by DSG in correspondence and allegations by DSG in the complaint, support its argument that "the same construction standards"

11

in the petition unambiguously means ordinance standards. However, the Town does not cite to legal authority to support its resort to extrinsic evidence to establish that the provision is unambiguous in these circumstances. *See Industrial Risk Insurers v. American Eng'g Testing, Inc.*, 2009 WI App 62, ¶25, 318 Wis. 2d 148, 769 N.W.2d 82 ("Arguments unsupported by legal authority will not be considered, and we will not abandon our neutrality to develop arguments."); *c.f. Town Bank*, 330 Wis. 2d 340, ¶33 ("Only when the contract is ambiguous, meaning it is susceptible to more than one reasonable interpretation, may the court look beyond the face of the contract and consider extrinsic evidence to resolve the parties' intent.").

¶26 In sum, the Town fails to show that the disputed language in the petition unambiguously refers to the standards in the Town driveway ordinance, or any other ordinances, that applied to the old road.

## II. The circuit court's findings specifying the standards of "an in-kind road"

¶27 The Town argues, in the alternative, that three of the circuit court's specifications of the standards of "an in-kind road" are essentially findings of fact and that as findings of fact they are clearly erroneous. We first state the standard of review and then address each challenged specification in turn.

¶28 "We affirm factual determinations unless they are clearly erroneous." *Steinbach v. Green Lake Sanitary Dist.*, 2006 WI 63, ¶10, 291 Wis. 2d 11, 715 N.W.2d 195. "A circuit court's findings of fact are clearly erroneous when the finding is against the great weight and clear preponderance of the evidence." *Royster-Clark, Inc. v. Olsen's Mill, Inc.*, 2006 WI 46, ¶12, 290 Wis. 2d 264, 714 N.W.2d 530.

¶29 The Town argues that the circuit court erroneously ordered that the entire length of new road must be an average of 21 feet wide. The Town argues that only the first 485 feet of the new road should be 21 feet wide, because the new road is 835 feet long while the old road was 485 feet long. The court rejected this argument based on the following findings: the Town constructed a longer replacement road, in part, to allow DSG to access its property from the county road; a narrower road would not provide that access; and in the petition the Town did not describe how long the replacement road would need to be in order to provide that access. The Town fails to show that any of these findings are clearly erroneous. Instead, the Town argues that, if the petition requires only that the new road meet the physical characteristics of the old road, then the new road need not be any minimum width at all beyond the length of the old road. However, this argument disregards both the court's finding that a narrower road will not preserve DSG's access, and the court's interpretation that the old road's physical characteristics need to be modified as required by the new road's different location and topography and its dual purpose to serve the park while also preserving DSG's use of the road to access its property for agricultural and personal purposes.

¶30 The Town also argues that the circuit court erroneously ordered that the new road's apron—the place where the new road meets the county road—must be widened to accommodate the agricultural equipment used to farm DSG's property. As with the new road's width, the Town argues that it need only replicate the size of the old road's apron so that the new road has the same physical characteristics as the old road. And, as with the new road's width, this argument ignores the court's findings supporting the specification of a wider apron, which were as follows.

¶31    The circuit court found based on all of the relevant evidence that, given the new location as to where the new road intersects the county road, an apron wider than was sufficient for DSG's use of the old road is necessary to accommodate DSG's agricultural equipment.  That evidence showed that DSG, using the same type of agricultural equipment as it used on the old road, cannot turn left onto the county road from the new road with the old road-sized apron, and that it encounters difficulties turning right.  The court rejected the new width proposed by DSG's engineers because that proposal assumed the use of different equipment from that used by DSG.  Accordingly, the court left it to the parties to determine the proper width necessary to accommodate DSG's agricultural equipment.  The Town fails to show that the court's findings supporting this specification are clearly erroneous.

¶32    Finally on these issues, the Town argues that the circuit court erroneously ordered that the Town construct stormwater management facilities in compliance with the Dane County stormwater ordinance if the new road contains 18,000 or more square feet of impervious surface.  As the Town notes, the ordinance requires stormwater management facilities if the amount of impervious surface exceeds 20,000 square feet.  DANE COUNTY, WIS., ORDINANCE, § 14.07. The Town acknowledges that the old road had a stormwater detention basin, and that a detention basin is one option for complying with the County ordinance. However, the Town asserts, further analysis would be required to determine the location, nature, and extent of stormwater management facilities appropriate for the new road, should it exceed the 20,000 square-foot threshold in the ordinance. The Town further asserts that, should the new road exceed that threshold once the Town implements the specifications ordered by the circuit court, "the Town will need to comply with the County requirements."  The Town concludes on this point

14

by asserting that the 18,000 square-foot threshold imposed by the court "is a compromise" for which neither party advocated.

¶33    We do not discern among these assertions a developed argument as to how or why the circuit court erred in reaching that "compromise."  We could reject the Town's argument on that basis.  *See **State v. Jackson***, 229 Wis. 2d 328, 337, 600 N.W.2d 39 (Ct. App. 1999) ("A party must do more than simply toss a bunch of concepts into the air with the hope that either the trial court or the opposing party will arrange them into viable and fact-supported legal theories."); ***Herder Hallmark Consultants, Inc. v. Regnier Consulting Grp., Inc.***, 2004 WI App 134, ¶16, 275 Wis. 2d 349, 685 N.W.2d 564 ("Ordinarily we will not address undeveloped arguments.").    However, we also briefly explain why this specification is not clearly erroneous.

¶34    The circuit court found that the old road had a stormwater management facility in the form of a detention basin.  The court also found that the new road "as it will be constructed according to this order will be very close to the minimum 20,000 square feet" that would require that the new road also have stormwater management facilities under the Dane County ordinance.  In light of these factual findings, which the Town does not argue are clearly erroneous, the court imposed the 18,000 square-foot threshold to require the Town to construct stormwater management facilities "as if" the new road met the 20,000 square-foot threshold.  We conclude that this specification is not unreasonable based on the unchallenged factual findings supporting it.

## CONCLUSION

¶35    For the reasons stated, we affirm.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5. (2021-22).